844 So.2d 1180 (2003)
Jennifer Nicole BRITT and Larry Wayne Doubleday, Appellants,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01548-COA.
Court of Appeals of Mississippi.
May 6, 2003.
*1181 Sarah C. Jubb, Sardis, David Clay Vanderburg, attorneys for appellant.
Office of the Attorney General by Charles W. Maris, attorney for appellee.
Before KING, P.J., THOMAS and CHANDLER, JJ.
KING, P.J., for the court.
¶ 1. Jennifer Nicole Britt and Larry Wayne Doubleday were tried together and convicted of felony child abuse in the Circuit Court of the Second Judicial District of Panola County. They were each sentenced to twenty years in the custody of the Mississippi Department of Corrections. Britt and Doubleday bring separate appeals. They raise the following issues which are cited verbatim. Britt's issues:
A. The court erred in allowing hearsay statements made by Steven Britt to: John Britt, Betty Britt, Jimmy McCloud, Batesville Police Office; and Tina Turner, Department of Human Services, Social Worker.
B. The Court erred in determining that Steven Britt and Summer Elmore were unavailable witnesses. Dr. Snow was a psychologist and was allowed to play a video of the child, Steven Britt. Defendant objected on hearsay and relevancy. The Defendant was denied her right of confrontation of witnesses and confrontation of accusers; Defendant was denied rights of cross examination of her accusers.
Doubleday's issues:
I. Did the trial court abuse its discretion by declaring the children unavailable *1182 as witnesses thereby denying Appellant Larry Wayne Doubleday his right to confront and cross examine his accusers?
II. Were the statements made by the children to John Britt, Jimmy McCloud and Tina Turner inadmissible hearsay regardless of the children's availability as witnesses?

FACTS
¶ 2. The facts, according to the State's proof, indicate that in September 2000, two year old Stephen Britt and his five year old sister, Summer Elmore, lived primarily with their father, John Britt, Jr. and his parents, John Britt, Sr. and Betty Britt. The children's mother, Jennifer Britt, who, though still married to John Britt, Jr., lived with her boyfriend, Larry Doubleday, and their infant son, Zachary. On alternate weekends, Jennifer would have Stephen and Summer for visitation beginning on Friday afternoon and continuing until Sunday afternoon. The children would be delivered to their mother at a Batesville convenience store named Rascals. Such was the situation on the weekend beginning Friday, September 22, 2000. The children had been picked up as usual by their mother and were to remain with her until Sunday afternoon; however, at noon on Saturday Jennifer called John Britt, Sr. at his place of business and demanded that the children's father come and get Stephen. She claimed that Stephen had fallen and injured himself and was out of control. Mr. Britt, Sr. explained that the children's father was not there.
¶ 3. At approximately 3:00 p.m. Mr. and Mrs. Britt, Sr. closed their business and went home. Within a very short period of time they received calls from three different individuals, including Becky Elmore, Jennifer Britt's sister, and Betty Hill, Doubleday's sister, each of whom indicated that the Britts needed to get the children. Jennifer also called again and informed the Britts that she was at Rascals with the children and demanded that they come and get them.
¶ 4. Fearing the worst, the Britts called the Batesville Police Department and requested that an officer meet them at Rascals. There was no officer at Rascals when the Britts arrived so Mrs. Britt went inside to again call for assistance. Jennifer and Doubleday were there with all three children. Jennifer hurriedly put Stephen and Summer and their clothes in Mr. Britt's car and started to leave. Mr. Britt, Sr. informed Jennifer that the Batesville Police Department had been called and an officer was on the way and would want to talk to her. Jennifer became irate and began to use profane language and declared that, "I didn't beat my gd kids. I don't care what they say." She and Doubleday then drove off.
¶ 5. Stephen's face and head were covered with bruises and when Mrs. Britt asked what happened to him he responded that "mama and Larry Wayne" had beaten him. Moments later, Batesville Police Officer Jimmy McCloud arrived. The officer took one look at Stephen, and advised the Britts to take the child to the emergency room. On the way to the hospital Summer also told the Britts that her "mama and Larry Wayne" had beaten Stephen.
¶ 6. Dr. William Haire, the physician who examined and treated Stephen in the emergency room, testified that Stephen had extensive bruises over the entire scalp, his right ear, his forehead, his eyes, his left posterior shoulder, and both hips. Dr. Haire further testified that the left side of Stephen's face was severely bruised and swollen. Dr. Brad Dye, an ear, nose, and throat specialist to whom Stephen was referred for evaluation of his facial injuries, testified that Stephen had multiple facial *1183 bruises both on his forehead, around both eyes, and around both cheeks. Tina Turner, a Department of Human Services social worker assigned to the case, testified that both Stephen and Summer told her that "mama and Larry Wayne" had caused Stephen's injuries.
¶ 7. After their arrest, Britt and Doubleday initially blamed each other. In her statement to the police, Britt stated that Doubleday had beaten Stephen and that she was afraid of Doubleday. She admitted having spanked the child but claimed not to have spanked hard enough to leave a bruise. Doubleday, in his statement to the police, denied any responsibility for Stephen's injuries. While refusing to directly accuse Jennifer, he made several statements that implicated her in the beating.

Analysis of Jennifer Britt's Issues
I. Hearsay statements
¶ 8. In Jennifer Britt's first issue, she alleges that it was inadmissible hearsay for the trial court to allow several of the witnesses to give testimony concerning what the children said about who caused the injuries to Stephen. Britt claims that since the children were declared unavailable as witnesses by the trial court, "particularized guarantees of trustworthiness" needed to be shown from the "totality of circumstances, including only those relevant circumstances that surround making of statement and that render declarent [sic] worthy of belief." She cites to Miller v. State, 473 So.2d 945 (Miss.1985), for the proposition that a police officer's testimony that a robbery suspect was identified by a third party not present in the courtroom and not available to be confronted and cross-examined violated the defendant's right of confrontation. This is the full extent of Britt's argument on this issue.
¶ 9. The State, understandably, counters that Britt's "argument" is in reality no argument at all and cannot form the basis for reversal. The State cites the well-established principle that, "[i]t is the duty of counsel to make more than an assertion; they should state reasons for their propositions, and cite authorities in their support." Johnson v. State, 154 Miss. 512, 513, 122 So. 529, 529 (1929). There is little more that this Court can add to the State's response except to say that the issue is barred for failure to support the argument with "citations to the authorities, statutes and parts of the record relied upon." M.R.A.P. 28(a)(6).
II. Unavailability of the children as witnesses.
¶ 10. The argument on Britt's second issue suffers from the same shortcomings as the argument on her first issue. She alleges error on the part of the trial court in determining that Stephen and Summer were unavailable as witnesses and claims that it resulted in the denial of her rights of confrontation and cross-examination of her accusers. Britt fails to cite to any case or statutory authority and fails to support her assertions with any kind of argument or logic or reason, she merely makes allegations of error.
¶ 11. She concludes by quoting from article 3, section 26 of the Mississippi Constitution which provides that in a criminal prosecution for rape, adultery, fornication, sodomy, or crime against nature the trial court, in its discretion, may exclude from the courtroom all persons except those necessary to conduct the trial. On the basis of that provision Britt claims that the trial court erred by declaring the children unavailable rather than clearing the courtroom of everyone except those persons necessary to conduct the trial. This argument totally ignores the fact that Britt was not prosecuted for any of those crimes. Needless to say, this issue has no merit.

*1184 Analysis of Larry Doubleday's Issues
I. Unavailability of the children as witnesses.
¶ 12. Doubleday basically makes the same allegations of error as Britt; however, he does a more substantial job of supporting his claims. Doubleday claims that the trial court committed reversible error in finding that Stephen Britt and Summer Elmore were unavailable as witnesses. The trial court found that both children were unavailable as witnesses under the provisions of M.R.E. 804(a)(6) which provides that a declarant is unavailable in the following situation:
(6) In the case of a child, because of the substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused.
The trial court ruled that the overall testimony of Dr. Snow, a licensed, professional counselor and professor at the University of Mississippi, who was accepted by the court as an expert in the area of child abuse, and who was seeing the children on a regular basis in play therapy, made it clear to the court that there would be substantial impairment of the children's psychological health if they were compelled to testify in the presence of Britt and Doubleday.
¶ 13. Doubleday attempts to persuade this Court that Dr. Snow's testimony was to the effect that the problem the children would have in testifying had more to do with the atmosphere of the courtroom itself rather than the presence of the appellants, and, as such, would not support a finding of unavailability under Rule 804(a)(6). The record indicates that Dr. Snow actually testified that, "asking these children to be in front of two adults who they were being asked to accuse of something would be traumatizing in and of itself, whether it was in a courtroom or wherever if the adults were present."
¶ 14. The abuse of discretion standard is applied when considering a lower court's decision that a witness is unavailable, and the trial judge's determination will not be disturbed on appeal unless the appellate court finds that the trial judge abused his discretion. Naylor v. State, 759 So.2d 406, 408(¶ 5) (Miss.2000). This Court finds that the trial court was entitled to rely on the uncontested testimony of the expert and did not abuse its discretion in finding that the children were unavailable within the meaning of M.R.E. 804(a)(6).
¶ 15. Doubleday also contends that the State failed to provide adequate notice of its contention that the children were unavailable as required by M.R.E. 804(b)(5). This matter was raised in pre-trial motions on the day of the trial. Britt and Doubleday had initially been indicted in the First Judicial District of Panola County. The crimes charged had been committed in the Second Judicial District of Panola County. When this discrepancy was discovered, the original indictment was dismissed and Britt and Doubleday were re-indicted in the Second Judicial District. It is undisputed that the State gave the required M.R.E. 804(b)(5) notice under the first indictment. Britt and Doubleday received this notice approximately five months before they were brought to trial. The trial court ruled that the notice under the dismissed indictment was sufficient to fulfill the notice requirement under M.R.E. 804(b)(5). This Court agrees.
¶ 16. As noted by the State in its brief, the supreme court has held that it is the trial court's duty to determine whether notice is sufficient under an identically-worded notice requirement under M.R.E. 803. Cummins v. State, 515 So.2d 869, *1185 873 (Miss.1987) (overruled on other grounds by Morgan v. State, 703 So.2d 832, 841 (Miss.1997)). The Cummins court further held that the trial court is usually given great latitude in making that determination. Id. This issue has no merit.
II. Admissibility of the children's statements
¶ 17. Doubleday premises this argument on a comment by the trial court judge during pre-trial motions to the effect that the statements by the children were admissible under either M.R.E. 803(1), present sense impression, or (2), excited utterance. While conceding that the court ultimately did not base its decision to admit the statements on either 803(1) or (2), but rather, on the basis of the unavailability exception of M.R.E. 804(a)(6), Doubleday, nevertheless, argues the inadmissibility of the statements on the basis of M.R.E. 803(1) and (2). Having previously found no abuse of discretion in the trial court's holding that the children's statements were admissible under M.R.E. 804(a)(6) this issue is rendered moot.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF PANOLA COUNTY OF CONVICTION OF FELONY CHILD ABUSE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS TO EACH APPELLANT IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO PANOLA COUNTY.
McMILLIN, C.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY.