# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-01957-SCT

*AARON BISHOP*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2006 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RAY T. PRICE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/13/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.    This appeal arises from Aaron Bishop's conviction of sexual battery under Mississippi Code Annotated Section 97-3-95(1)(d) and touching of a child for lustful purposes under Mississippi Code Annotated Section 97-5-23(1).  On appeal, Bishop raises the following issues: (1) that his Sixth Amendment right to confrontation under the United States Constitution and Article 3, Section 26 of the Mississippi Constitution was violated; (2) that the trial court erred in admitting the minor victim's out-of-court statements under Mississippi

Rule of Evidence 803(25); and (3) that the trial court erred in admitting the expert testimony of Brenda Donald. We find all issues raised by Bishop to be without merit and therefore, affirm his conviction.

## FACTS AND PROCEDURAL HISTORY

¶2. On April 4, 2006, A.C.[1] gave her four-year-old daughter, C.C., a bath. At that time the child had a rash all over her body, commonly referred to as "slap cheek." As A.C. was getting the child out of the bathtub, C.C. asked her mother if she could show her father the bumps on her "too-too."[2] After A.C. explained to her daughter that girls do not show their "too-toos" to their fathers and that fathers do not show their "too-toos" to their daughters, C.C. disclosed to her mother that she had already seen her father's, Aaron Bishop's, "too-too." C.C. further described to her mother, in child-like terms, what her father's penis looked like and reported that she had performed oral sex on her father, that his "too-too [had] spit on her," that it "tasted yucky," and that he had instructed her to "never bite it." Furthermore, C.C. reported that her father "tickled her too-too with his finger."

¶3. On April 5, 2006, A.C. took C.C. to the Attala County Sheriff's Department to report the abuse. The Attala County Sheriff's Department contacted the Department of Human Services and arranged an interview for C.C. with Glenda Nail at the Sheriff's Department.

---

[1]Initials have been used to refer to both the minor child and her mother in order to better protect their identities.

[2]A.C. and her daughter, C.C., refer to both the male and female sexual organs as a "too-too."

2

Also present during this interview were Amy Lee of the Department of Human Services and Zellie Shaw of the Attala County Sheriff's Department. C.C. did not disclose any abuse during this interview. Also on April 5, 2006, A.C. took C.C. for a physical examination with Dr. Betty Turner. Dr. Turner found no physical evidence of sexual abuse, however, during the course of the examination C.C. reported "that her daddy had played with her too-too."

¶4. At that time, A.C. and C.C. moved out of the family's home and went to stay with A.C.'s grandparents. Later that day, Bishop came to the home where A.C. and C.C. were staying and asked A.C. why they had left. A.C. "told him because [C.C.] told me what he had done." Bishop first denied the allegations, and then reported that one day C.C. had walked in the bathroom while Bishop was masturbating and he had accidently ejaculated on her.

¶5. On April 7, 2006, C.C. was interviewed by Dr. Trudi Porter, a forensic interviewer, at the request of either the Attala County Sheriff's Department or the Department of Human Services. During that interview, C.C. reported to Dr. Porter that she had performed oral sex on her father and said, "It's nasty. Yuk. Yuk." On June 6, 2006, C.C. attended her first therapeutic session with Brenda Donald, which included play therapy. At the time of the pre-trial hearing in this case, Donald and C.C. had completed nine or ten therapy sessions. During the course of her therapy with Donald, C.C. made very detailed statements regarding the sexual abuse that she endured by Bishop.

¶6. Aaron Bishop was charged with sexual battery under Mississippi Code Annotated Section 97-3-95(1)(d) and touching of a child for lustful purposes under Mississippi Code

3

Annotated Section 97-5-23(1) in the Justice Court of Attala County on April 18, 2006. A grand jury indicted him on August 8, 2006. On September 27, 2006, Bishop was convicted of the aforementioned crimes after a jury trial.

¶7. Bishop was sentenced to serve a term of thirty years for sexual battery and fifteen years for touching of a child for lustful purposes. As to the fifteen-year sentence, for touching of a child for lustful purposes, after Bishop has served the first five years of the sentence he is to be placed in a post-release supervision program. The sentences are to run consecutively, and Bishop was also ordered to pay a fine in the amount of $1,000, and all court costs, fees and assessments in the case. The trial court denied Bishop's Motion for Judgment Notwithstanding the Verdict or in the Alternative for New Trial on October 11, 2006. From this conviction Bishop appeals to this Court.

## DISCUSSION

I. **Whether Bishop's Sixth Amendment Right to Confrontation under the United States Constitution and Article 3, Section 26 of the Mississippi Constitution Was Violated.**

¶8. Bishop asserts that his right to confrontation was violated when the trial court admitted the out-of-court statements of C.C. through the testimony of her mother, A.C., and Brenda Donald. Bishop relies on *Idaho v. Wright*, 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990), a case decided under *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), which provided that a hearsay statement not falling within a deeply-rooted hearsay exception was not admissible under the *confrontation clause* unless it contained substantially particularized guarantees of trustworthiness equivalent to the firmly-

4

rooted hearsay exceptions.  Bishop's reliance on these cases is in error, as ***Ohio v. Roberts*** was overruled by the United States Supreme Court in ***Crawford v. Washington***, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004).  *See also* ***Whorton v. Bockting***, 167 L. Ed. 2d 1, 9, 127 S. Ct. 1173, 2007 U.S. LEXIS 2826 (2007); ***Davis v. Washington***, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006).

¶9.    The *confrontation clause of the Sixth Amendment* provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  In ***Crawford***, "the United States Supreme Court held that 'the Confrontation Clause of the *Federal Constitution's Sixth Amendment* bars the admissibility of out-of-court testimonial statements by an unavailable witness offered in a criminal trial to prove the truth of a matter asserted (also known as hearsay) unless the defendant has had a prior opportunity to cross-examine the witness about the statement.'" ***Bailey v. State***, 956 So. 2d 1016, 1027 (Miss. Ct. App. 2007) (citation omitted) (emphasis added).

¶10.   The inquiry, therefore, turns on whether the statements offered against Bishop were "testimonial statement[s]" within the context of the *confrontation clause*.

> Only [testimonial] statements of this sort cause the declarant to be a "witness" within the meaning of the *Confrontation Clause*.  It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the *Confrontation Clause*.

***Davis v. Washington***, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224, 237 (2006) (emphasis added).  However, ***Crawford*** did not provide a firm definition of "testimonial," but rather provided examples of "testimonial" evidence, including prior testimony at a

preliminary hearing, before a grand jury, at a former trial, and statements taken by police officers in the course of interrogations. *Crawford*, 541 U.S. at 52-53. This Court has concluded that "a statement is testimonial when it is given to the police or individuals working in connection with the police for the purpose of prosecuting the accused." *Hobgood v. State of Mississippi*, 926 So. 2d 847, 852 (Miss. 2006).

¶11. In the case sub judice, the trial court admitted statements of C.C. that were given to her mother, A.C., and to her therapist, Brenda Donald. It is noteworthy that the trial court held a lengthy, pre-trial hearing on the admissibility of these statements, as well as on whether the testimony of Dr. Porter would be admissible. The trial court found that "the child was sent to Dr. Porter by law enforcement for the purpose of gathering evidence against Mr. Bishop." The trial court applied this Court's determination in *Hobgood* regarding what is considered a "testimonial statement" and determined that "under *Hobgood* it (C.C.'s statements to Dr. Porter) is testimonial" and "is a violation of the confrontation clause."

¶12. The trial court further applied this Court's definition of "testimonial statement" in its determination that C.C.'s spontaneous statement to her mother was non-testimonial. A.C. is not a police officer, and was not working in conjunction with law enforcement for the purposes of prosecuting Bishop when C.C. disclosed to her that Bishop had been sexually abusing her. Moreover, the record reflects that statements made by C.C. to her mother were completely spontaneous.

¶13. Finally, the trial court determined that Brenda Donald's interactions with C.C. were strictly for the purposes of treatment and not for any prosecutorial purpose. In fact, Brenda

Donald had completed eight or nine therapeutic sessions with C.C. at the time of the pre-trial hearing. The evidence reflects that C.C. was brought to Donald by her family members solely for treatment purposes. From the testimony of Donald, the trial court found "nothing to indicate that the child's statements were suggested or solicited by Donald, that many of them were spontaneous narratives and that they were obtained for medical and psychological treatment."

¶14. For the foregoing reasons, we hold that the trial court was correct in its determination that the statements made by C.C. to her mother, A.C., and to Brenda Donald were non-testimonial in nature. Furthermore, because these statements were non-testimonial, they do not trigger the protections of the *confrontation clause*. Therefore, Bishop's assertion that his *right to confrontation* was violated is without merit.

**II.   Whether the Trial Court Properly Admitted C.C.'s Out-of-Court Statements Under Mississippi Rule of Evidence 803(25).**

¶15. The admission of testimony at trial is left to the sound discretion of the trial court, and error will be found only where the trial court has abused that discretion. *Lynch v. State*, 877 So. 2d 1254, 1281 (Miss. 2004) (citation omitted). Furthermore, this Court will not reverse a trial judge's decision on the admissibility of testimony offered at trial unless prejudice amounting to reversible error resulted from such a decision. *Alexander v. State*, 610 So. 2d 320, 329 (Miss. 1992).

¶16. The record reveals that the trial judge conducted the required Rule 803(25) hearing outside the presence of the jury, and heard extensive testimony of witnesses for both the

prosecution and the defense. *See **Pryer v. State***, 958 So. 2d 818, 822 (Miss. Ct. App. 2007).

As previously stated herein, the trial court determined that C.C.'s statements to A.C. and

Brenda Donald were non-testimonial. The trial court further determined that A.C. and

Donald could testify to C.C.'s statements under Mississippi Rule of Evidence 803(25).

Regarding the admissibility of the statements through Donald, the trial court found that if a

statement meets the reliability test under Rule 803(25), it is admissible under Rule 803(4).

Rule 803(25) provides:

> **Tender Years Exception**. A statement made by a child of tender years[3]
> describing any act of sexual contact performed with or on the child by another
> is admissible in evidence if: (a) the court finds, in a hearing conducted outside
> the presence of the jury, that the time, content, and circumstances of the
> statement provide substantial indicia of reliability; and (b) the child either (1)
> testifies at the proceedings; or (2) is unavailable as a witness: provided that
> when the child is unavailable as a witness, such statement may be admitted
> only if there is corroborative evidence of the act.

Miss. R. Evid. 803(25).

### A. Substantial Indicia of Reliability

¶17. The comment to Rule 803(25) provides the following non-exhaustive list of factors

that a trial court should consider in determining if the statement has sufficient indicia of

reliability:

> (1) whether there is an apparent motive of declarant to lie; (2) the declarant's
> general character; (3) whether more than one person heard the statements; (4)

---

[3]C.C. was four years old at the time that the statements were made, therefore, it is undisputed that she was a child of tender years. *See **Veasley v. State***, 735 So. 2d 432, 436 (Miss. 1999).

whether the statements were spontaneous; (5) the timing of statements; (6) the relationship between the declarant and the witness; (7) the possibility of faulty recollection by the declarant is remote; (8) certainty that the statements were made; (9) the credibility of the witness testifying about the statements; (10) the declarant's age or maturity; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge and experience made it unlikely that the declarant fabricated.

Miss. R. Evid. 803(25) cmt.; *see also **Smith v. State***, 925 So. 2d 825, 834 (Miss. 2006). In the instant case, the trial court made extensive written findings addressing each of the aforementioned factors in making its determination.

¶18.    In addressing the first factor, whether there is an apparent motive on the child's part to lie, the trial court stated "nothing in the testimony at the hearing or in the documentation furnished to the Court indicate such." Bishop asserts that C.C. had an apparent motive to lie, that being the fact that she and her mother had moved out of the home in which they had resided with Bishop; the assertion being that A.C. and Bishop had pre-existing marital problems that would motivate C.C. to lie. However, the record reveals that A.C. and C.C. moved out only after C.C. disclosed the sexual abuse to her mother, and that the decision to move out was solely motivated by the disclosure.

¶19.    In addressing the second factor, the general character of the child, the trial court noted that the child was four years old when she first disclosed the sexual abuse, and further noted that an expert testified that, in her opinion, C.C. was incompetent to testify at trial.[4] The trial

---

[4] Bishop asserts throughout his brief that the trial court found C.C. incompetent as a witness. Nowhere in the record is such a determination by the trial court; rather the court determined that C.C. was unavailable as a witness pursuant to Rule 803(25).

court's order states "[t]his factor is a negative on the issue of reliability, but not determinative." With regard to the third factor, the trial court found, and the record reveals, that C.C. made statements concerning the sexual abuse by her father to her mother, to Dr. Trudi Porter, and to Brenda Donald. Further, all of C.C.'s statements were consistent.

¶20. On the issue of spontaneity of C.C.'s statements, it is clear from the record that her initial statement to her mother was completely spontaneous. In the trial court's order, the court "places significance on the fact that this statement[, C.C.'s statement to her mother,] was repeated almost verbatim to Porter and Donald even to the point of using the term "Yuk, Yuk." The finding on these two factors subsumes factors (5) and (6): the timing of the declaration and the relationship between the child and the witness." The trial court further found that the relationship between C.C. and her mother was significant, as was the relationship between C.C. and Donald. At the time of trial, Donald testified that she and C.C. had completed eight or nine therapy sessions together, which is indicative that Donald had built rapport with C.C..

¶21. The trial court also found, based on the consistency of C.C.'s statements, that the possibility that her recollection of events is faulty is remote, and that there is no factual basis in the record to support an argument that the statements were not made. Furthermore, the trial court found that the persons to whom C.C. made statements were credible.

¶22. As to factor eleven, whether suggestive techniques were used in eliciting C.C.'s statements, Bishop asserts that C.C.'s statements were the result of leading and suggestive questioning techniques, as well as the product of repeated interviewing of the child. In

10

support of this argument at trial, Bishop offered the testimony of Mary Lyn Huffman, Ph.D.

The following is an excerpt from the trial court's order:

> . . . . For reasons set forth hereinafter, the Court places far more weight on the testimony of the mother and the findings and testimony of Dr. Porter and Brenda Donald than on that of Dr. Huffman.
>
> Dr. Porter is a forensic psychologist trained in interviewing children who have been sexually abused and has actually conducted those interviews. She stated that in her interview with the child she used non-leading and non-suggestive questions, and from the evidence the Court finds that to be true. She also found that the child's knowledge of sexual behavior and body parts were suggestive of her being exposed to sexual behavior. The Court finds these observations to be persuasive and that it is unlikely that child would emit these type of statements unless she had exposure. Brenda Donald is a clinical social worker with over twenty years of experience in dealing with child sexual abuse cases. Her testimony is that she has provided therapy to hundreds of children. In addition to their training Porter and Donald have actual practical experience in the field of sexual child abuse and in this case actual contact with the child. As to Dr. Huffman, the Court did accept her as an expert in the fields of children's memory and interview techniques and suggestibility of a child witness. However, by her own testimony Dr. Huffman is an academic not a clinician, and her testimony is based on studies and reports of others and not principles which she has personally witnessed or applied. . . . She is qualified to testify as to what the reports and studies found on suggestibility, but as to practical application of the same, she has no expertise at all. . . . Most of her conclusions and opinions have little or no factual basis in the record and obviously from her own statements suffer from a lack of information. When faced with a lack of information, she assumes and speculates. . . . The facts before the Court are not that [C.C.] *seemed* to make a spontaneous disclosure, but that she did, in fact, make a spontaneous disclosure. Huffman rejects the statement on the basis of the language limitations of *a* 4-year old and on the basis that [C.C.] did not provide a narrative to any other interviewer. However, we are not dealing with *a* 4-year old, we are dealing with *this* 4-year old who gave extensive narratives to Brenda Donald over the course of her therapy. . . . Therefore, the Court finds the statements concerning sexual abuse by the father made to the mother and Brenda Donald, which are the only statements of the child admissible at trial, were elicited without suggestive techniques and satisfy the requirements of Factor (11).

11

¶23. In addition to the trial court's findings, additional evidence within the record supports the trial court's finding that C.C.'s statements bore substantial indicia of reliability. Dr. Porter testified that C.C.'s statements to her were spontaneous and that C.C. did not appear to be "coached." Dr. Porter also testified that, although C.C. was unable verbally to demonstrate the difference between a truth and a lie, she was reliable in the fact that her statements to A.C., to Dr. Porter, and to Brenda Donald were all consistent. Brenda Donald also testified that a possible reason that C.C.'s statements to her revealed more details over the course of their therapeutic sessions likely is due to the fact that she had established a good rapport with C.C., and further testified that even though her statements involved more detail, they were consistent with C.C.'s previous statements.

¶24. Finally, C.C.'s statements indicate that she possessed extensive sexual knowledge well beyond her age, four years old. C.C. was able to describe the shape and size of Bishop's penis. She also described a sexual device that was used by Bishop and stated, "He put a toy that makes noise in his booty." C.C. further described in child-like terms that she understood the concept of male ejaculation, and described that "it tickled" when Bishop performed oral sex on her.

¶25. After review of the record, we find that the trial court's finding that C.C.'s statements bore substantial indicia of reliability is supported by substantial evidence. Furthermore, the trial court followed the proper procedure in its determination, and did not abuse its discretion in finding that C.C.'s statements bore indicia of reliability and in admitting her statements pursuant to the tender years exception. Miss. R. Evid. 803(25).

12

## B. C.C.'s Unavailability as a Witness

¶26. While Bishop does not specifically argue that the trial court erred in finding that C.C. was unavailable as a witness under Rule 804(a)(6), the Court will address it herein for the purpose of fully analyzing Bishop's argument under Rule 803(25). Mississippi Rule of Evidence 804(a)(6) states that a child is unavailable as a witness if there is a "substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused." Miss. R. Evid. 804(a)(6). After hearing testimony from Dr. Porter and A.C., the trial court found C.C. to be unavailable to testify, stating:

> I have considered the testimony of Dr. Porter and the mother. I have also considered for the purpose of what effect that trauma might have, the fact that the child is four years of age. The doctor testified that her experience is that this would traumatize most of the people that would be put in that position, and she did not make an exception for this child. And that coupled with the mother's testimony as to the difference in the child after these things were revealed is to the extent that I find that she is unavailable under the rules.

¶27. In *Britt v. State*, 844 So. 2d 1180 (Miss. Ct. App. 2003), the appellate court affirmed the conviction of the two appellants, a mother and her boyfriend, of severely beating the mother's child. On appeal, the appellants argued, inter alia, that the trial court abused its discretion when finding the children unavailable as witnesses under Rule 804(a)(6). *Britt*, 844 So. 2d at 1183-84. The appellate court held that the trial court did not abuse its discretion when it relied on the uncontested testimony of a licensed, professional counselor, who was accepted by the courts as an expert in the area of child abuse, who testified that

13

there would be substantial impairment of the children's psychological health if they were compelled to testify in the presence of the defendants. *Id*. at 1184.

¶28. In the instant case, the judge held a pretrial hearing on this issue at which Dr. Porter testified to the following:

> **Q.** Dr. Porter, in your expert opinion, what do you believe to be the emotional or the psychological effects on [C.C.] if she was required to testify in the physical presence of the man that is accused of doing these acts on her, her father[,] Aaron Bishop?
>
> **A.** It is my opinion, having met with [C.C.], having heard the history from [C.C.'s] mother, and having read the therapist's report of [C.C.'s] behavioral problems and behavioral adjustment, that it would be harmful to [C.C.] to have to testify in the presence of her father. I think, you know, it's important that he hear what her testimony is, but to make her do that face to face, I believe would be very injurious to her because of her age and her behavioral problems that she has had, and she is just particularly vulnerable.
>
> . . . .
>
> **Q.** So again, in your expert opinion, your opinion is that it will be substantially likely that [C.C.'s] emotional or psychological health would be substantially impaired if she was required to testify in the physical presence of her father?
>
> **Bishop's Counsel**: Objection, Your Honor. He is leading the witness. It's his own direct witness.
>
> **Court**: He is just stating what the testimony has already been. It is cumulative. She has already answered.
>
> **Q.** Would that be your opinion?
>
> **A.** I believe it would be harmful to her. I do.

¶29.    As in *Britt*, the evidence presented regarding the likelihood of trauma if C.C. were to testify in open court was completely uncontradicted.   Therefore, we find the trial court did not abuse its discretion in finding C.C. unavailable to testify in accordance with Rule 804(a)(6).

### C.  Corroborating Evidence

¶30.    The comment to Rule 803(25) states, "Corroboration required for admissibility under M.R.E. 803(25)(b)(2) need not be eyewitness testimony or physical evidence, but may include confessions, doctor's reports, inappropriate conduct by the child, and other appropriate expert testimony."  Miss. R. Evid. 803(25) cmt..  A.C. testified that Bishop's response when confronted with the disclosure that C.C. had made, was that C.C. had walked in on him while he was masturbating and he had accidently ejaculated on her face.  The trial court found this to be sufficient evidence of corroboration.

¶31.    While Rule 803(25) provides specific examples of evidence that can serve to corroborate the act of the defendant, this list is in no way exhaustive.  Therefore, we find that the trial judge did not err in his determination that A.C.'s statement regarding Bishop's response when confronted is sufficient to corroborate the act under Rule 803(25).

### III.    Whether Brenda Donald's Testimony Satisfied Mississippi Rule of Evidence 702 and *Daubert*.

¶32.    On appeal, Bishop asserts that the trial court erred in admitting Brenda Donald's expert testimony.  Specifically, Bishop raises the issue of "whether the statements elicited

from the child by Ms. Donald, which went far and beyond what the child revealed to anyone else, were elicited by a reliable, scientific method as required by MRE 702."

¶33. It is well-settled that the admission of expert testimony is within the sound discretion of the trial judge. *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003) (citation omitted). Furthermore, this Court will not reverse a trial court's decision to admit expert testimony "unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion." *Id*. (quoting *Puckett v. State*, 737 So. 2d 322, 342 (Miss. 1999)). Mississippi Rule of Evidence 702 states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Miss. R. Evid.702. In *McLemore*, this Court adopted the modified *Daubert* standard for determining the admissibility of expert testimony.

> . . . [T]he analytical framework provided by the modified *Daubert* standard requires the trial court to perform a two-pronged inquiry in determining whether expert testimony is admissible under 702. The modified *Daubert* rule is not limited to scientific expert testimony – rather, the rule applies equally to all types of expert testimony. First, the court must determine that the expert testimony is relevant – that is, the requirement that the testimony must "assist the trier of fact" means the evidence must be relevant. Next, the trial court must determine whether the proffered testimony is reliable. Depending on the circumstances of the particular case, many factors may be relevant in determining reliability, and the *Daubert* analysis is a flexible one. *Daubert* provides "an illustrative, but not an exhaustive, list of factors" that trial courts may use in assessing the reliability of expert testimony.

16

*McLemore*, 863 So. 2d at 38 (internal citations omitted).  Brenda Donald was admitted by the trial court as an expert in child therapy.  Moreover, the only expert testimony given by Donald was as follows:

> **Q**.  Based on experience dealing with all these hundreds of children that have you [sic] interviewed through the years, based on your experience in this particular case with [C.C.], would you say that [C.C.'s] statements and her actions during these sessions are consistent with those of other children that have suffered this type of sexual abuse?
>
> **A**.  Yes.

While it is true that an expert may not offer an opinion as to the veracity of the alleged victim, that is, whether the  alleged child sexual abuse victim has been truthful, it is within the scope of permissible testimony for an expert to testify regarding his or her opinion that the alleged victim's characteristics are consistent with a child who has been sexually abused. *Smith v. State*, 925 So. 2d 825, 835-36 (Miss. 2006); *see also* *Elkins v. State*, 918 So. 2d 828, 832 (Miss. Ct. App. 2005).

¶34.    Bishop asserts that Donald's expert testimony was unreliable, and attempts to characterize child therapy and clinical social work as a pseudoscience.[5]  The trial court found, however, that Donald's testimony was reliable, based on her experience as a child therapist  since 1980, her treatment of hundreds of children who had been sexually abused, and her qualification as an expert on prior occasions.

---

[5]In order to make this argument in his brief, Bishop references and attaches an article which is not part of the record.  It is well-settled that this Court will confine its review to what appears on the record.  *Pulphus v. State*, 782 So. 2d 1220, 1224 (Miss. 2001).

¶35. We find that the trial court did not abuse its discretion in admitting the testimony of Brenda Donald. Therefore, we find this issue to be without merit.

## CONCLUSION

¶36. This Court finds all issues raised by Bishop to be without merit. We find that Bishop's *right to confrontation* was in no way violated, that the trial court did not err in admitting the out-of-court statements of C.C. under Rule 803(25), and that the testimony of Brenda Donald satisfied Rule 702 and ***Daubert***. Accordingly, we affirm Bishop's conviction of sexual battery and touching of a child for lustful purposes.

¶37. **COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE TO SERVE A TERM OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE TO SERVE A TERM OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. APPELLANT SHALL PAY A FINE OF $1,000.00, ALL COURT COST, FEES AND ASSESSMENTS. THE SENTENCE IMPOSED IN COUNT II IS TO RUN CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT I.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**