# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00968-COA

**HARRY LYNN TREST A/K/A HARRY TREST**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                       **APPELLEE**

DATE OF JUDGMENT:            06/16/2021
TRIAL JUDGE:                 HON. CHRISTOPHER LOUIS SCHMIDT
COURT FROM WHICH APPEALED:   HANCOCK COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      SAMUEL CHRISTOPHER JOHNSON
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: ALEXANDRA ROSENBLATT
DISTRICT ATTORNEY:           WILLIAM CROSBY PARKER
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 05/23/2023
MOTION FOR REHEARING FILED:

### BEFORE WILSON, P.J., GREENLEE AND McDONALD, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     Harry Trest (Trest) was convicted of molesting two of his granddaughters. On appeal, Trest claims that the circuit court erred by (1) admitting evidence of prior bad acts under Mississippi Rule of Evidence 404(b) and failing to grant a mistrial, (2) admitting evidence under the tender-years exception to hearsay under Rule 803(25), and (3) ruling that the evidence was sufficient to convict him of sexual battery. Finding that the circuit court did not abuse its discretion and that the evidence was sufficient for Trest's convictions for sexual battery, we affirm his convictions and sentences.

### FACTS AND PROCEDURAL HISTORY

¶2.     The alleged victims in this case are minors K.B. and C.B.[1] K.B. and C.B. lived with their mother R.J. in Leesville, South Carolina. K.B. and C.B. were eight and nine years old, respectively, at the time of the incident and eleven and twelve years old at the time of the trial. From 2016 until 2018, the minor children spent the majority of their summers and at least one week of the winter with their maternal grandmother Mary Trest (Mary) and her husband Harry Trest at their home in Waveland, Mississippi. In January 2019, K.B. and C.B. disclosed to their mother R.J. that Trest had molested them while they were in Mississippi.

¶3.     R.J. took the children to a hospital in South Carolina and contacted the police. A physical exam was conducted at the hospital, and both girls showed no signs of physical abuse. That same day, Mary left Mississippi and joined R.J. and the children in South Carolina. Soon after, K.B. and C.B. traveled to Mississippi to undergo a forensic interview conducted by Kaitlyn Jewell.

¶4.     During the interview, K.B. stated that Trest would touch the inside and outside of her vagina. He would move his hands and fingers up and down while saying "ooh and ahh." Trest would expose his penis and ask K.B. to touch it. She stated she refused. Trest also showed her pictures on his phone of other people's penises, including one with a tattoo. She alleged the abuse started after she saw him walking naked out of his shower one afternoon.

¶5.     C.B. stated that her abuse began from as early as she could remember. She alleged Trest would touch the inside and outside of her vagina while moving his fingers up and down. He would expose himself and his penis would get erect. He would ask her, "[D]oes

---

[1] We use initials in place of the minor children's names and their mother's name.

that feel good?" while touching her. He asked C.B. to touch his penis, but she said she would not. He also showed her pictures on his phone of other people's penises. She stated that the abuse happened nearly every day she visited Trest.

¶6. Both girls stated that they would ask Trest to stop, but he would not. The abuse always happened when one girl was alone with Trest while the other girl and Mary were in another part of the house. Although the girls did not use the correct language when describing "private parts," they were able to describe a penis accurately in details that children of their age are unlikely to know. Jewell provided a diagram to the minor children, which allowed them to indicate which parts of their bodies Trest touched and which parts of his body he showed them. Both girls indicated using the diagram that Trest was touching their vaginas and showed them his penis.

¶7. Trest was indicted in Hancock County for four counts of sexual battery under Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014) and four counts of touching a child for lustful purposes under Mississippi Code Annotated section 97-5-23(1) (Supp. 2015).[2] The case proceeded to trial, where the State put on ten witnesses. On appeal, Trest challenges the admission of the testimonies of M.K.B., Kaitlyn Jewell, R.J., and the two minor children.[3]

¶8. M.K.B. is a natural granddaughter of Trest. She testified about different instances in

---

[2] Trest was additionally indicted for four more counts of touching a child for lustful purposes and one count of computer luring. The State retired these counts to the files.

[3] M.K.B. was a minor at the times of the alleged sexual abuse, so we use initials in place of her name.

the past when Trest would sexually abuse her. She alleged that when she was between the ages of five and ten, Trest touched the inside and outside of her vagina. He would expose his penis and ask her to touch it, often forcing her to do so. He "moan[ed] in [her] ear" and would ask her "if it felt good." She testified that Trest once exposed himself to her while coming out of the shower.

¶9.    Trest filed a motion in limine to bar M.K.B.'s testimony. The State offered her testimony under Mississippi Rule of Evidence 404(b) for the purpose of showing motive, absence of mistake or lack of accident, and plan or mode of operation. After a hearing on the issue, the court ruled that the testimony was admissible under Rules 404(b) and 403. During her proffer, M.K.B. mentioned that the abuse happened to both her and her brothers. The court admonished M.K.B. to limit her testimony to herself only. At trial, M.K.B. initially testified that "[Trest] sexually abused us when we were kids." The circuit court stopped the proceedings and admonished her out of the presence of the jury. M.K.B. mistakenly used "us" once more during her testimony, but it was quickly corrected by the State. Trest moved for a mistrial, but the court ruled that the reference was fleeting and not so prejudicial as to warrant that remedy.

¶10.   Prior to M.K.B.'s testimony, the circuit court asked Trest if he would like to provide a limiting instruction to the jury. Trest answered yes and submitted a proposed instruction marked D-27. At his request, the judge read D-27 to the jury:

> Ladies and gentlemen, I need to instruct you that the acts testified about concerning [M.K.B.] are alleged acts relating to the charges for which the defendant is not presently on trial and are to be considered only for the limited purpose of showing proof of motive and/or of intent or absence of mistake or

4

accident. You cannot and must not simply infer that the defendant acted in conformity with his previous acts and that he is, therefore, guilty of the charges for which he is presently on trial.

¶11. The court admitted both Jewell's and R.J.'s testimony under the tender-years exception to hearsay. MRE 803(25). Jewell testified to the out-of-court statements that K.B. and C.B. gave during their forensic interview, while R.J. testified about their first disclosure of the abuse. The circuit court heard arguments and ruled that the children's out-of-court statements bore substantial indicia of reliability. Specifically, the court found that the children had no motive to lie; they had good character; they made similar allegations to at least two people; they made a spontaneous disclosure; their statements were not elicited by Jewell or R.J. in a suggestive manner; the timing of the statements suggested reliability; the video of the forensic interview corroborated their statements; Jewell and R.J. were credible witnesses; and the children's age and maturity indicated reliability.

¶12. K.B. and C.B. both testified at trial. Their testimony was similar to their previous out-of-court statements, except both girls testified that Trest's hands remained outside their bodies. K.B. testified:

> Q. Did his hand stay on the outside of your body or did it ever go on the inside of your body?
> A. Outside.
> Q. From the outside?
> A. Yes, ma'am.

C.B. testified:

> Q. And did his hand stay on top of your body or did it go in your body?
> A. It would stay on top.
> Q. It would stay on top?
> A. Yes, ma'am.

> Q. Did his fingers stay on top of your body or did they go inside your body?
>
> A. On top.

This aspect of their testimony was refuted by both Jewell and R.J.'s testimony, as well as the forensic-interview video where the girls stated that Trest had penetrated them.

¶13. The jury convicted Trest on four counts of sexual battery and four counts of touching a child for lustful purposes. The circuit court sentenced Trest to serve a total of forty-five years day-for-day in custody without eligibility for parole. Trest moved for a judgment notwithstanding the verdict or, alternatively, for a new trial, which was denied. He then appealed.

## DISCUSSION

### I. M.K.B.'s Testimony

¶14. Trest claims that the circuit court abused its discretion by (1) allowing M.K.B.'s testimony at trial and (2) failing to strike her testimony or, alternatively, failing to declare a mistrial when M.K.B. testified about her siblings against the court's order.

¶15. We review a trial court's evidentiary rulings using an abuse-of-discretion standard. *Cook v. State,* 161 So. 3d 1057, 1065 (¶21) (Miss. 2015). "This Court will not reverse a trial judge's decision on the admissibility of testimony offered at trial unless prejudice amounting to reversible error resulted from such a decision." *Id.* (quoting *Bishop v. State,* 982 So. 2d 371, 375 (¶15) (Miss. 2008)).

> **(1) The circuit court did not abuse its discretion by admitting M.K.B.'s testimony under Rules 404(b)(2) and 403.**

¶16. Rule 404(b)(1) prohibits admitting "evidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." MRE 404(b)(1). However, "this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2). "Evidence of a sexual offense, other than the one charged, which involves a victim other than the victim of the charged offense for which the accused is on trial, may be considered by the jury if properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction. . . ." *Green v. State*, 89 So. 3d 543, 549 (¶15) (Miss. 2012) (quoting *Derouen v. State*, 994 So. 2d 748, 756 (¶19) (Miss. 2008)).

¶17. Trest claims that M.K.B.'s testimony did not "bear substantial resemblance" to his alleged acts to fall under the Rule 404(b) prior-bad-acts exception under *Derouen* and its progeny. *See Gore v. State*, 37 So. 3d 1178, 1187 (¶20) (Miss. 2010). He argues that the circumstances are closer to the facts in *White v. State*, 228 So. 3d 893, 898 (¶¶3-8) (Miss. Ct. App. 2017). In *White*, this Court found that the circuit court erred in denying defendant White's motion in limine and objections regarding evidence of a prior uncharged statutory rape of a different victim. *Id.* at 902 (¶22). White, who was age thirty-two at the time, was on trial for the alleged sexual acts he performed on two minors, ages twelve and thirteen. *Id.* at 897 (¶¶2-3). M.M., White's niece by law, had alleged that White committed violent sexual acts on her, such as forced penetration. *Id.*

¶18. The circuit court admitted prior-bad-acts evidence over the objection of White for an uncharged count of statutory rape stemming from an affair White had with a fifteen-year-old child, nine years before the trial. *Id.* at 898 (¶6). On appeal, this Court reversed the circuit's ruling based partly on the fact that the prior-bad-acts evidence did not factually align with M.M.'s allegations at trial. *Id.* at 901 (¶¶18-20). White's previous sexual activity, while legally defined as statutory rape, showed no signs of violence or coercion. *Id.* The testimony at trial suggested that the relationship between the then twenty-four-year-old White and the fifteen-year-old minor was consensual. *Id.* Ultimately, this Court would rule that the facts did not bear enough substantial resemblance to be more probative than prejudicial.[4] *Id.* at 904 (¶27).

¶19. The circuit court found that there was enough substantial resemblance between M.K.B.'s testimony and the other evidence presented to meet the Rule 404(b) prior-bad-acts exception and show motive and a common plan. A review of the record demonstrates the similarities between M.K.B.'s testimony and the other witnesses' testimonies at trial. Trest allegedly molested M.K.B. when she was between five and ten years old, while C.B. and K.B. were eight and nine, respectively. The minor children all shared a familial relationship with Trest, and the abuse allegedly always happened in the family home. Trest's alleged acts were also similar: M.K.B., C.B., and K.B. all testified that Trest would (1) touch their vagina, (2) make noises of sexual gratification, (3) show them his penis and (4) request that they

---

[4] This Court also noted that the State did not specify which exception under 404(b) the evidence was being presented on and instead listed all the exceptions under the rule. *Id.* at 902 (¶¶21-22). Further, this Court noted that the circuit court failed to conduct a Rule 403 analysis. *Id.* 903 (¶24).

8

touch it. K.B. and M.K.B. both testified that Trest exposed himself to them while coming out of the shower.

¶20.    M.K.B. testified that her abuse happened while in the presence of other people and Trest argues that this fact distinguishes the testimonies like in *White*. However, this fact is not necessarily different. Although the abuse of the minor child happened in isolation, the other child and Mary were always somewhere else in the house. Even if this fact weighs against admitting the evidence, the other similarities in testimony are enough to justify the Rule 404(b) exceptions for motive and common plan. *See McGrath v. State*, 271 So. 3d 437, 441-42 (¶¶17-18) (Miss. 2019).

¶21.    In addition, we find the circuit court did not abuse its discretion by allowing M.K.B.'s testimony under the Rule 403 analysis. Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403. The court found that the evidence was not so remote in time or dissimilar to the facts to make the testimony more prejudicial than probative. *See Gore*, 37 So. 3d at 1186-87 (¶19). Like in *Gore*, the evidence is probative to demonstrate both Trest's tendency toward "pedophilic sexual activities with young and developing female juveniles" and that his "means of accomplishing these activities on past occasions bear substantial resemblance to each other and with the present offense." *Id.* at 1187 (¶20) (quoting *State v. Driggers*, 554 So. 2d 720, 726 (La. Ct. App. 1989)).

9

¶22. Finally, the court provided the jury with a proper limiting instruction to prevent potential undue prejudice. The court instructed the jury that it "must not simply infer that the defendant acted in conformity with his previous acts and that he is, therefore, guilty of the charges for which he is presently on trial." Trest argues in his appellate brief that this instruction is insufficient to prevent undue prejudice. However, not only did Trest fail to object to this instruction at trial, he initially provided the court with this particular instruction. "It is axiomatic that a defendant cannot complain on appeal of alleged errors invited or induced by himself." *Thomas v. State*, 249 So. 3d 331, 347 (¶55) (Miss. 2018) (quoting *Galloway v. State*, 122 So. 3d 614, 645 (¶87) (Miss. 2013)); *see also Harris v. State*, 861 So. 2d 1003, 1015 (¶24) (Miss. 2003) ("A defendant cannot complain of an instruction which he, not the State, requested.").

### (2) The circuit court did not abuse its discretion by denying Trest's motion for a mistrial.

¶23. Trest claims the circuit court erred by failing to grant a mistrial when M.K.B. testified that Trest abused "us" in violation of the court's order in limine.

¶24. "Whether to grant a motion for a mistrial is within the sound discretion of the trial court. The standard of review for [a] denial of a motion for a mistrial is abuse of discretion." *Dorsey v. State*, 310 So. 3d 1238, 1247 (¶26) (Miss. Ct. App. 2021) (quoting *Smith v. State*, 158 So. 3d 1182, 1185 (¶9) (Miss. Ct. App. 2015)). "A trial judge need declare a mistrial only when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case." *Young v. State*, 281 So. 3d 179, 186 (¶29) (Miss. Ct. App. 2019) (quoting *Hutto v. State*, 227 So. 3d 963, 984 (¶66) (Miss. 2017)).

¶25. During the State's proffer, the circuit court limited M.K.B.'s testimony regarding Trest's alleged sexual abuse to her personal experience. At trial, the State asked M.K.B. if there was anything unusual with her relationship with Trest, and M.K.B. testified, "He sexually abused us when we were kids." The court immediately stopped the testimony, removed the jury, and admonished M.K.B. to keep the testimony centered on her experience only. Later in the testimony, the State asked M.K.B.:

Q. And when you say he would put his hands, he would put his hands inside your clothing, inside your pants you are saying?
A. Yes.
Q. How frequently would this occur?
A. Every time he seen [sic] us, me.
   MR. RAFFERTY: Objection, Judge.
   MR. DANIEL: Your family?
A. Yes, every time he seen [sic] my family.
   THE COURT: Hold on just a moment. The objection is based upon?
   MR. RAFFERTY: The court's ruling, Your Honor.
   THE COURT: Overruled.

After M.K.B. finished her testimony, the circuit court instructed the jury:

Ladies and gentlemen, I need to instruct you that the acts testified about concerning [M.K.B.] are alleged acts relating to the charges for which the defendant is not presently on trial and are to be considered only for the limited purpose of showing proof of motive and/or of intent or absence of mistake or accidence. You cannot and must not simply infer that the defendant acted in conformity wit his previous acts and that he is, therefore, guilty of the charges for which he is presently on trial.

Trest moved for a mistrial due to M.K.B.'s violation of the court's order. The circuit court denied the motion, stating that M.K.B. did not intentionally disregard the order and that there was a contemporaneous limiting instruction following her testimony. The court found that the infraction did not rise to the level of striking her testimony or declaring a mistrial.

11

¶26.   We find that the circuit court did not abuse its discretion by denying the motion for a mistrial.  The trial judge sits in the best position to determine if an improper comment has a prejudicial effect.  *Tate v. State*, 20 So. 3d 623, 642 (¶48) (Miss. 2009).  When M.K.B. testified to "us," the circuit court stopped the proceedings and admonished her.  The second "us" was, at worst, a less obvious infraction of the court's order but likely was not an infraction at all.  The context was in a description of when she was abused by Trest.  Her answer was, "Every time he seen us, me."  The prosecutor corrected her, and she explained, "Every time he seen the family."  The jury was admonished to only consider the testimony for the purpose of motive, intent, absence of mistake, or lack of accident.  M.K.B.'s testimony that her siblings were abused was cumulative but nonetheless mitigated by the judge's limiting instruction.  The jury is presumed to follow the instructions the trial judge gives them.  *Gales v. State*, 299 So. 3d 861, 869-70 (¶26) (Miss. Ct. App. 2020).

¶27.   Trest cites *Snelson v. State*, 704 So. 2d 452, 457 (¶30) (Miss. 1997), for the argument that M.K.B.'s testimony regarding "us" was so prejudicial that it requires reversal.  We find that *Snelson* is distinguishable from our case.  In *Snelson*, the defendant was on trial for murder, and the testimony in question was a quote from the defendant that he had killed three or four other people.  *Id.* at 455 (¶21).  The court found that this testimony was elicited by the State and that the response was "the only one which could have been anticipated for the question asked."  *Id.* at 455-56 (¶23).  Despite the issue of the defendant's other murders being a motion in limine prior to the testimony, and after the court sustained an objection by the defense at the time, the court still declined to grant a mistrial.  *Id.* at 456 (¶24).  This

12

Court reversed, granting a mistrial because the testimony was so prejudicial, even a limiting instruction by the trial judge could not "unbake the apple" such that it could not be concluded that testimony did not inflame or improperly influence the jury. *Id.* at 458 (¶33).

¶28. There are two main facts that distinguish *Snelson* from the case sub judice. Unlike the State in *Snelson*, the State in this case did not elicit the improper testimony from M.K.B. In fact, the State stated that they specifically instructed M.K.B. not to testify about her siblings at all. M.K.B. could have answered the State's question in such a way as to avoid bringing her siblings into the testimony. Furthermore, the court found that M.K.B.'s improper testimony was accidental.

¶29. In addition, we find that the improper testimony in this case does not rise to the level in *Snelson*. M.K.B.'s testimony was admitted for a limited purpose under Rule 404(b). In *Snelson*, the testimony was an alleged quote from the defendant that he had killed other people. *Id.* at 455 (¶21). That information had no admissible use and served only to prejudice the jury. The circuit court found that M.K.B.'s testimony could be admitted under Rule 404(b) to show motive, intent, absence of mistake, or lack of accident and that a limiting instruction would be sufficient to prevent potential undue prejudice. We find that the circuit court did not abuse its discretion by declining to grant a mistrial. Trest has not shown that the court committed an error of judgment that caused him substantial and irreparable prejudice. *Young*, 281 So. 3d at 186 (¶29); *see also* MRCrP 23.5.

## II. R.J.'s and Jewell's Testimony

¶30. Trest claims the circuit court erred by admitting R.J.'s and Jewell's testimony

concerning the minor children's out-of-court statements under the Rule 803(25) tender-years exception to hearsay.

¶31. As mentioned, the standard of review for evidentiary rulings is abuse of discretion. *Cook*, 161 So. 3d at 1065 (¶21). Hearsay is generally inadmissible. MRE 802. However, Mississippi allows for a tender-years exception for a statement by a child of tender years describing any act of sexual contact with or by another. Before admission, the court must determine there is substantial indicia of reliability from the child, and the child must either testify or be unavailable to testify. MRE 803(25). The following factors are used to guide a trial court's determination of reliability:

> (1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

MRE 803 cmt.

¶32. The circuit court followed the steps for admitting the Rule 803(25) evidence and found that the evidence was admissible. Trest does not disagree with the court's analysis. Rather, he argues that he has "no practical position to refute any of [the] [reliability] factors" and that admitting this evidence creates a "presumption of guilt that the defendant must refute, which runs contrary to [his] due process rights." This is not the case. Trest was able to cross-examine the witnesses at trial. Furthermore, he was allowed to call the minor

14

children's motives into question. Trest was able to compare R.J. and Jewell's testimony with the trial testimony of the minor children. Trest cites no case that supports his statement that his due process rights were violated. He had the ability and opportunity to make arguments on his behalf, and the jury was properly instructed to weigh the testimony presented to them.

¶33. Trest also argues that R.J.'s and Jewell's testimony should be excluded because they contradict C.B.'s and K.B's trial testimony. Trest fails to cite any case that supports his position. R.J.'s and Jewell's testimony was supported by the children's statements made in the forensic interview video. The Mississippi Supreme Court has noted that tender-age witnesses may testify inconsistently in sexual abuse cases. *See Bell v. State*, 797 So. 2d 945, 950 (¶21) (Miss. 2001) ("Given the tender age of the victim at the time of the offense, the trauma of such victimization, the multiple perpetrators, and the anxiety of testifying in open court, it is understandable that the victim may have testified somewhat inconsistently about Milton's criminal sexual acts against her."). Trest argues on appeal that R.J. was not a credible witness due to past drug use and a kidnapping situation that involved her ex-husband. However, the circuit court found R.J. to be credible. Concerning the evidence in the record, we find that the circuit court did not abuse its discretion by allowing R.J. and Jewell to testify under Rule 803(25).

### III. Sufficiency of the Evidence

¶34. Trest claims there was insufficient evidence to convict him of sexual battery because at trial C.B. and K.B. did not claim to have been penetrated.

¶35. This Court reviews a challenge to the sufficiency of the evidence de novo. *Barnett*

*v. State*, 315 So. 3d 458, 462 (¶21) (Miss. 2021). "All credible evidence that is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id.* "If the facts and inferences so considered point in favor of the defendant on *any* element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, this Court must reverse and render." *Id.*

¶36.    Section 97-3-95(1)(d) states that a person is guilty of sexual battery if "he or she engages in sexual penetration with: (d) a child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." The jury heard evidence from R.J. and Jewell that the children told them about sexual penetration by Trest. Furthermore, the jury was able to watch the video of the forensic interview where C.B. and K.B. both independently testified they were penetrated.

¶37.    While at trial the children did not claim to have been penetrated, the testimony was not a denial as Trest suggests. The State asked C.B., "[D]id his hand stay on top of your body or did it go in your body?" She replied, "It would stay on top." The State asked K.B., "Did his hand stay on the outside of your body or did it ever go on the inside of your body?" She replied, "Outside." As discussed above, tender-age witnesses testifying in the context of sexual cases may be inconsistent in their testimonies. *See Bell*, 797 So. 2d at 950 (¶21). Even if the children had denied the penetration at trial, the jury would have had to resolve the conflict of the other evidence presented. *See Crawford v. State*, 282 So. 3d 1230, 1239 (¶28) (Miss. Ct. App. 2019).

¶38. Taking all evidence consistent with guilt as true and giving the State all favorable inferences, a reasonable jury could have found Trest guilty beyond a reasonable doubt.

## CONCLUSION

¶39. The circuit court did not abuse its discretion by admitting M.K.B.'s testimony under Rule 404(b) or by declining to grant a mistrial. Further, the circuit court did not abuse its discretion by admitting R.J.'s and Jewell's testimony under the tender-years exception to hearsay. MRE 803(25). Finally, there was sufficient evidence to support the convictions of Trest for sexual battery under section 97-3-95(1)(d). Accordingly, we affirm Trest's convictions and sentences.

¶40. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**

17