# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-01614-SCT

*DAVID PAUL ANDERSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/13/2009 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LEILANI PEPPER HILL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/07/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., LAMAR AND CHANDLER, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     David Paul Anderson was convicted by a jury of two counts of statutory rape and one

count of sexual battery.  Anderson was sentenced to life for each count of statutory rape and

to thirty years for the one count of sexual battery, with all sentences to run concurrently.

After the trial judge denied his Motion for Judgment Notwithstanding the Verdicts, or in the

Alternative, a New Trial, Anderson perfected this appeal, alleging errors at the trial-court

level.  Finding Anderson's assignments of error to be without merit, we affirm the judgment

of convictions and sentences of the Circuit Court for the First Judicial District of Harrison County.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     On December 2, 2006, Deborah Blevin entered Anderson's home and witnessed Anderson having sexual intercourse[1] with his eleven-year-old daughter, Allison, in his bedroom.[2] Blevin then announced her presence, stepped away from the room, and went to the living room. After a few moments, Anderson and Allison emerged from Anderson's bedroom. Blevin then approached Allison and told her "I know." Allison began crying, and Blevin then took Allison to her home next door. Rachel Abbot was at Blevin's home when Blevin and Allison arrived. Allison then told Abbot and Blevin that this had been happening for "quite a while" and that it had occurred in their home, as well as at the family farm.

---

[1] Blevin gave the following testimony:

> But [Anderson] was standing nude at the end of his bed, and he had Allison. He had his hand on her thighs. And he had her lifted up off the bed, and she was just staring out there. She wasn't even there. And he had her, and he was leaned toward her at the foot of the bed. And he had her by her thighs, and he was thrusting her toward him having intercourse with her. And so I couldn't believe what I was seeing. I couldn't believe this was my brother doing this to his own child.

Anderson later was indicted for sexual battery occurring on this date.

[2] Because the victim in this case is a minor, pseudonyms are used for the victim and her family members. Although David Anderson is the victim's father, a pseudonym is not used for him because he is the defendant. David Anderson, Deborah Blevin, and Rachel Abbot are siblings. David Anderson and Rachel Abbot lived in the same home, along with Allison. Rachel Abbot is Allison's biological aunt and adoptive mother. For the sake of emphasis, Rachel Abbot, Deborah Blevin, and Allison are pseudonyms.

¶3. Abbot and Blevin reported the incident to the police a month later, on January 3, 2007. Abbot testified that she waited a month to report the incident because she was shocked and did not know what to do.

¶4. Anderson was indicted on October 27, 2007, for two counts of statutory rape under Mississippi Code Section 97-3-65(1)(b) (Rev. 2006), and one count of sexual battery under Mississippi Code Section 97-3-95(2) (Rev. 2006). Count I of the indictment charged Anderson with statutory rape "on or about November, 2006." Count II of the indictment charged Anderson with statutory rape "on or about November 25, 2006." Count III charged Anderson with sexual battery "on or about December 2, 2006."

¶5. Anderson eventually went to trial before a jury in the Circuit Court for the First Judicial District of Harrison County, Judge Lisa P. Dodson presiding. At trial, Allison testified outside the courtroom through closed-circuit television. Allison first testified to the event that occurred on December 2, 2006, stating that "[Anderson] put his private part into my private part." Allison stated that this was not the first time Anderson had intercourse with her and that he had been doing this since she was about seven years old. Allison also testified that Anderson had raped her more than one time in November 2006, specifically both before and after Thanksgiving. Next, Allison testified that Anderson had brought her to the family farm on November 25, 2006, and had raped her in his truck. When asked why she never had told anyone of the abuse, Allison stated that she was afraid Anderson would hurt her if she told anyone. Deborah Blevin, Rachel Abbot, and Dr. Donald Matherne all testified at trial, corroborating Allison's testimony.

¶6.    Anthony Clarite, a detective with the Gulfport Police Department, interviewed Allison after the abuse was reported to police. Clarite testified that Allison was very hesitant to speak with him. He eventually was able to get Allison to discuss the events, and she told him that her father had sexual intercourse with her in his bedroom on the night of December 2, 2006. Clarite also used anatomical drawings during his interview with Allison and had her circle the areas of Anderson's body that Anderson had used to touch her and the area of her body that Anderson had touched. Allison circled the vaginal area on the female diagram and the penis on the male diagram. Allison also told Clarite that her father had sexual intercourse with her on more than one occasion.[3]

¶7.    Seth Abbot, Anderson's brother, also testified. Abbot testified that he was with Anderson and Allison the entire time they were at the family farm on November 25, 2006, and that he did not see Anderson have sexual intercourse with Allison. Anderson did not testify in his own defense.

¶8.    Anderson was convicted by the jury of two counts of statutory rape and one count of sexual battery. After the jury verdict, defense counsel requested a presentence investigation of Anderson's mental capacity. The trial judge reviewed the investigation results prior to the sentencing hearing. The investigation had resulted in a recommendation for further mental evaluation. After hearing testimony from Anderson's family and friends, the trial judge

---

[3]Clarite stated the following at trial:

[Allison] advised that she felt his private part go inside her private part. And that's when I asked her the question, how many times did you feel it, was it once, more than once, something else. She advised it happened more than once. That's when she led into it happened on more than one occasion.

4

sentenced Anderson to life in prison for Counts I and II and to thirty years for Count III, with all three sentences running concurrently. After a hearing on Anderson's Motion for Judgment Notwithstanding the Verdicts, or in the Alternative, a New Trial, the trial court entered its order denying Anderson's motion. Anderson then appealed to this Court.

## DISCUSSION

¶9.     Anderson presents eleven issues for this Court's consideration: (1) whether the defendant's trial counsel provided effective assistance; (2) whether the admission of hearsay testimony was proper under the tender-years exception; (3) whether the State impermissibly asked a child sexual-assault victim leading questions; (4) whether the trial court erred in denying the defendant's motion to exclude the testimony of Dr. Donald Matherne; (5) whether the trial court erred in failing to quash Count I of the indictment; (6) whether the State violated the golden rule during closing arguments; (7) whether the State improperly commented on the defendant's right to remain silent; (8) whether the trial court erred by failing to assure that defense exhibit 1 was properly submitted to the jury for consideration; (9) whether the evidence was sufficient to support Counts I and II of the indictment; (10) whether the verdict was against the overwhelming weight of the evidence; and (11) whether cumulative error denied Anderson a fair trial.

   **I.     WHETHER THE DEFENDANT'S TRIAL COUNSEL PROVIDED EFFECTIVE ASSISTANCE**.

¶10.     Anderson claims that his trial counsel was ineffective for two reasons: (1) for failing to request a psychological examination to determine whether he was legally insane or

5

incompetent to stand trial; and (2) for waiving his right to be present at pretrial hearings, his right to an in-court identification by the victim, and his right to testify.

¶11.   Generally, ineffective-assistance-of-counsel claims are more appropriate for post-conviction proceedings rather than direct appeal. *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008).  "This is because during direct appeals the Court is limited to the trial court record in its review of the claim . . . ." *Id.* (citing *Wilcher v. State*, 863 So. 2d 776, 825 (Miss. 2003)). When the record lacks sufficient evidence adequately to address the claim, this Court should deny relief and preserve the defendant's right to argue the issue through a post-conviction-relief petition.  *Id.* (citing *Wilcher,* 863 So. 2d at 825; *Read v. State*, 430 So. 2d 832, 837 (Miss. 1983)).

¶12.   We find that, in today's case, the record does not contain sufficient evidence for this Court adequately to address Anderson's claims.  Thus, this issue is more appropriate for post-conviction-relief proceedings. *See Havard v. State*, 928 So. 2d 771, 795-96 (Miss. 2006).

## II.   WHETHER THE ADMISSION OF HEARSAY TESTIMONY WAS PROPER UNDER THE TENDER-YEARS EXCEPTION.

¶13.   Anderson argues that the trial court erred in allowing hearsay testimony of the victim's statements in accordance with the tender-years exception.  The standard of review for admission of evidence is abuse of discretion. *Hobgood v. State*, 926 So. 2d 847, 852 (Miss. 2006) (citations omitted). Mississippi Rule of Evidence 803(25) states in pertinent part:

> A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial

6

indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

The comment to Rule 803(25) lists the following factors that the trial court should examine when determining sufficient indicia of reliability:[4]

(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statements; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

¶14. A rebuttable presumption exists that a child under the age of twelve is of tender years. *Veasley v. State*, 735 So. 2d 432, 436 (Miss. 1999). Allison was eleven years old when she told her mother and aunt that Anderson had been having sexual intercourse with her, and she was twelve years of age when she made statements to Detective Clarite. At the time of trial, Allison was fourteen years old. When determining whether the tender-years exception applies, the court should consider the age of the child at the time the statements were made, not the age of the child at the time of trial. *Elkins v. State*, 918 So. 2d 828, 833 (Miss. Ct. App. 2005). Therefore, a rebuttable presumption exists in this case that Allison was of tender years when the hearsay statements to her mother and aunt were made.

---

[4]The introductory phrase under the comment states: "*Some factors* that the court should examine to determine if there is sufficient indicia of reliability are . . . ." (Emphasis added.)

¶15.   In addition to this rebuttable presumption, the trial court's ruling also met the requirements of Rule 803(25).  First, in accordance with section (a), a pretrial hearing was conducted to determine if Allison's statements had substantial indicia of reliability.  At the hearing, Allison's aunt, Deborah Blevin, testified to what Allison had told her and the circumstances surrounding the statements.  After Blevin had witnessed Anderson having sexual intercourse with Allison, Blevin told Allison that she knew what was happening.  Allison then told her that it had been happening for a long time and that she had not told anyone because she did not want her father to get in trouble.  Anderson also had told Allison not to tell anyone.  Rachel Abbot, Allison's mother, testified to the statements Allison had made to her.  Abbot testified that Allison had told her that her father had been "sexually molesting" her and that it had happened on more than one occasion.  Detective Clarite, who had conducted a forensic interview of Allison, testified about the statements that Allison had made to him and her demeanor during the interview.

¶16.   After hearing the testimony and arguments from counsel, the trial court, in considering some of the factors set out in the comment to Rule 803(25), determined that the hearsay statements did have substantial indicia of reliability.  The trial court found that: the statements were spontaneous and consistently repeated; Allison's mental state seemed to be one of a person who would not fabricate; Allison used terminology consistent with a person of her age and she had a lack of motive to fabricate things; and Allison seemed to be of the character that "would be able to relate things reliably to those she's speaking to."  Additionally, the trial court also considered that more than one person had heard the statements; that her relationships to the witnesses, especially her mother and aunt, showed

8

reliability; that the possibility of faulty recollection was remote; and that the people giving the statements seemed to be credible. The trial court also found that Allison seemed to be immature for her age and that suggestive techniques were not used. Finally, the trial court concluded that the factors weighed in favor of admitting the hearsay testimony.

¶17. From the record before us, we find no abuse of discretion in the trial court's determination that these factors showed substantial indicia of reliability in Allison's out-of-court statements. Lastly, section (b) of Rule 803(25) was satisfied, because Allison testified at trial. Accordingly, this Court finds no error on the part of the trial court in allowing Allison's hearsay statements to be admitted under Rule 803(25).[5] Thus, this issue is without merit.

### III. WHETHER THE STATE IMPERMISSIBLY ASKED A CHILD SEXUAL-ASSAULT VICTIM LEADING QUESTIONS.

¶18. Anderson argues that the trial court committed reversible error by allowing the State to lead the victim concerning the dates of the alleged acts charged in Counts I and II of the indictment.[6] Count I of the indictment charges Anderson with statutory rape "on or about

---

[5]Likewise, since Mississippi Rule of Evidence 403 is the "ultimate filter through which otherwise admissible evidence must pass," the record reveals that this evidence was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice. *Givens v. State*, 967 So. 2d 1, 9 (Miss. 2007) (citing *Jones v. State*, 920 So. 2d 465, 475 (Miss. 2006)).

[6]Count I of the indictment charged Anderson with statutory rape in accordance with Mississippi Code Section 97-3-65(1)(b) and stated:

David Paul Anderson in the First Judicial District of Harrison County, Mississippi, *on or about November, 2006* did feloniously and unlawfully have sexual intercourse with [Allison], a child under the age of fourteen (14) years and twenty-four (24) or more months younger than the said David Paul Anderson and not the spouse of the said David Paul Anderson at the time in

November, 2006;" Count II of the indictment charges Anderson with statutory rape "on or about November 25, 2006." Anderson objects to the following question asked of Allison by the prosecutor on redirect examination:

> State: Allison, did your dad have sex with you anytime before Thanksgiving in that month?  And you don't have to point to a day, just did he.  I'm asking if he did.

> Allison: I think he did, but I'm not quite sure.

During direct examination, however, Allison had testified that Anderson had intercourse with her during November 2006, both before and after Thanksgiving.

¶19.    Anderson claims that, without the leading question on redirect examination, the State would not have been able to present sufficient evidence as to Counts I and II.[7]  However, we

---

> question, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

(Emphasis added.)

Count II of the indictment also charged Anderson with statutory rape in accordance with Mississippi Code Section 97-3-65(1)(b) and stated:

> As part of the same common scheme or plan that: David Paul Anderson in the First Judicial District of Harrison County, Mississippi, *on or about November 25, 2006* did feloniously and unlawfully have sexual intercourse with [Allison], a child under the age of fourteen (14) years and twenty-four (24) or more months younger than the said David Paul Anderson and not the spouse of the said David Paul Anderson at the time in question, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

(Emphasis added.)

[7]Although Anderson argues that the State would not have been able to present sufficient evidence with regard to both Counts I and II, the testimony objected to refers only to the dates in Count I – "on or about November, 2006."  The record reveals that in 2006, Thanksgiving Day fell on November 23. The date of the alleged offense charged in Count

10

note that there was no objection to this question at trial.

¶20.    Mississippi Rule of Evidence 611(c) generally prohibits leading questions and states: "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop [the witness's] testimony." Rule 611's prohibition applies to redirect examination as well. *See* ***Parker v. State***, 378 So. 2d 662, 663 (Miss. 1980). With regard to the exception in Rule 611(c), this Court has found that "the 'classic example' of a situation ripe for leading questions on direct is where the witness is a child." ***Keyes v. State***, 733 So. 2d 812, 814 (Miss. 1999) (citations omitted). In ***Keyes***, the Court found that leading questions were appropriate for a ten-year-old sexual-assault victim. ***Id.***

¶21.    While leading questions generally are prohibited on direct examination, the facts of this case fit squarely within the exception in Rule 611(c). The witness is a young, sexual-abuse victim, and the question was used to clarify her testimony regarding the dates alleged in the indictments. Accordingly, we find no merit in this assignment of error.

### IV.    WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF DR. DONALD MATHERNE.

¶22.    Anderson filed a motion to exclude the testimony of Dr. Matherne, arguing that his testimony was not supported by ***Daubert*** principles.[8] After a hearing, the trial court denied Anderson's motion.

¶23.    The admission of expert testimony is within the sound discretion of the trial judge.

II was stated as "on or about November 25, 2006," which was the Saturday after Thanksgiving Day.

    [8]***Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

11

***Bishop v. State***, 982 So. 2d 371, 380 (Miss. 2008) (citing ***Miss. Transp. Comm'n v. McLemore***, 863 So. 2d 31, 34 (Miss. 2003)). This Court will not reverse a trial court's decision to admit expert testimony unless it finds that the trial court's decision "was arbitrary and clearly erroneous, amounting to an abuse of discretion." ***Id.*** (citations omitted).

¶24. Mississippi Rule of Evidence 702 governs the admissibility of expert testimony and states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

¶25. In ***McLemore***, this Court abandoned the long-accepted ***Frye*** standard[9] and adopted a modified ***Daubert*** standard, thus explaining how ***Daubert*** and Rule 702[10] should be applied.

> . . . . [T]he analytical framework provided by the modified ***Daubert*** standard requires the trial court to perform a two-pronged inquiry in determining whether expert testimony is admissible under Rule 702. The modified ***Daubert*** rule is not limited to scientific expert testimony – rather, the rule applies equally to all types of expert testimony. First, the court must determine that the expert testimony is relevant – that is, the requirement that the testimony must "'assist the trier of fact' means the evidence must be relevant." Next, the trial court must determine whether the proffered testimony is reliable. Depending on the circumstances of the particular case, many factors may be relevant in determining reliability, and the ***Daubert*** analysis is a flexible one.

---

[9] ***Frye v. United States***, 293 F. 1013, 1014 (D.C. Cir. 1923).

[10] By the time of our decision in ***McLemore***, Mississippi Rule of Evidence 702 had been amended by this Court, effective May 29, 2003, "to clarify the gatekeeping responsibilities of the court in evaluating the admissibility of expert testimony."

> *Daubert* provides "an illustrative, but not an exhaustive, list of factors" that
> trial courts may use in assessing the reliability of expert testimony.

*McLemore*, 863 So. 2d at 38 (internal citations omitted).

¶26. The *Daubert* factors include: Whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; and whether the theory or technique enjoys general acceptance within a relevant scientific community. *Daubert*, 509 U.S. at 593-94. "The applicability of these factors depends on the nature of the issue, the expert's particular expertise, and the subject of the testimony." *McLemore*, 863 So. 2d at 37 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

¶27. In today's case, the court conducted a pretrial *Daubert* hearing to determine the admissibility of Dr. Matherne's testimony. At the hearing, Dr. Matherne described his education, training, and work in the field of clinical psychology. Dr. Matherne testified that he had a Ph.D. degree in clinical psychology, had been in private practice for forty years, and currently mostly did consulting work for referrals from youth court and the government. Dr. Matherne also attended annual seminars and classes on clinical psychology.

¶28. Likewise, Dr. Matherne testified regarding his interview with Allison and the methodology he had used to interview her, including the "fist demonstration" he had used. Dr. Matherne testified that he had used the demonstration for descriptive purposes only and that he did not use it to substantiate an allegation of abuse. The following was Dr. Matherne's description of the demonstration:

I refer to it as the fist demonstration. It's not a test. It's simply a way to determine what is the child saying happened. There's no -- there's nothing around that gives you this opportunity. Sometimes I'll be asked, well, do you think that we should do a medical examination, and what do you think based upon what the child has said, is there going to be physical evidence.

And so having done this for many years, I arrived at a way that the child can best demonstrate this. And what I do is I ask them to take one hand, to imagine that this is their private area, and then to take the other hand and to show me what happened. And what will typically be demonstrated is the child will take the index finger most of the time and they will either touch the exterior or they will insert.

¶29. After hearing Dr. Matherne's testimony, the trial judge found that he was qualified as an expert in clinical psychology. While not expressly stating that Dr. Matherne's testimony was relevant – relevance being the first requirement for expert testimony under Rule 702 – the trial judge did state: "In this case Dr. Matherne's testimony is that he obtained information from various sources including from Allison and that he then rendered his opinions and his diagnosis based on that. It appears at least in this record his testimony is so based upon that."

¶30. Additionally, the trial court found that Dr. Matherne's testimony was reliable. The trial court noted Dr. Matherne's experience and extensive training in the field of psychology, including teaching others clinical psychology. The trial court also noted that Dr. Matherne's "fist demonstration" was not peer-reviewed. However, the trial judge found that, under *Daubert* and *Kumho*, peer review was not a requirement for a finding of reliability. *See also Poole v. Avara*, 908 So. 2d 716, 724 (Miss. 2005) ("Peer review by publication remains only one factor on a non-exhaustive list of factors for admissibility under evidence rules with a

14

liberal thrust. Though helpful when present, publication and peer review are not absolutely required; their absence does not constitute automatic inadmissibility.")

¶31. In 2004, the Court of Appeals in *Davis v. State* found that a trial court did not err in allowing Dr. Matherne to testify regarding the "fist demonstration." *Davis v. State*, 878 So. 2d 1020, 1024 (Miss. Ct. App. 2004). The Court of Appeals found that the technique was "only a form of information gathering." *Id.* Similar to *Davis*, the trial court in the present case found that Dr. Matherne's "fist demonstration" was ". . . simply a demonstration." We adopt the reasoning of the Court of Appeals as stated in *Davis*.

¶32. A trial court's decision to admit expert testimony should be upheld on appellate review unless this Court finds that the decision was arbitrary and clearly erroneous. *Poole*, 908 So. 2d at 721. Admittedly, Dr. Matherne's "fist demonstration" does not meet many of the *Daubert* factors. This Court has held, however, that this "does not constitute automatic inadmissibility." *Id.* at 724. The trial court found that Dr. Matherne's testimony was both relevant and reliable, and that the "fist demonstration" was simply a technique used to gather information; we agree. The testimony was based on scientific knowledge and would assist the trier of fact in determining or understanding a fact at issue. Considering the flexibility of the *Daubert* standard and the liberal thrust of our rules of evidence, we find that the trial court did not abuse its discretion in admitting Dr. Matherne's testimony.

## V. WHETHER THE TRIAL COURT ERRED IN FAILING TO QUASH COUNT I OF THE INDICTMENT.

¶33. Anderson argues that Count I of the indictment was flawed, because the time period was too uncertain or vague. Prior to trial, defense counsel filed a motion to quash Count I.

15

At a pretrial hearing, the trial court denied the motion, but allowed defense counsel to raise the issue again depending on the information the State presented regarding the dates.

¶34. Count I of the indictment charged Anderson with statutory rape under Mississippi Code Section 97-3-65(1)(b) (Rev. 2006) and stated that:

> David Paul Anderson in the First Judicial District of Harrison County, Mississippi, *on or about November, 2006* did feloniously and unlawfully have sexual intercourse with [Allison], a child under the age of fourteen (14) years and twenty-four (24) or more months younger than the said David Paul Anderson and not the spouse of the said David Paul Anderson at the time in question, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

(Emphasis added.)

¶35. Uniform Circuit and County Court Rule 7.06 requires indictments to include the date of the alleged offense. It also states, however, that "[f]ailure to state the correct date shall not render the indictment insufficient." URCCC 7.06.

¶36. With regard to child sexual-assault cases, this Court has held that specific dates in indictments are "not required so long as the defendant is 'fully and fairly advised of the charge against him.'" *Eakes v. State*, 665 So. 2d 852, 860 (Miss. 1995) (quoting *Morris v. State*, 595 So. 2d 840, 842 (Miss. 1991)). In *Eakes*, the indictment listed three time periods when the alleged assaults occurred "on, about, or between:" (1) December 1, 1990, and December 24, 1990; (2) February 1, 1991, and April 30, 1991; and (3) May 11 and 12, 1991. *Id.* At Eakes's trial, the victim testified that the assaults had occurred on December 26, 1990, January 26, 1991, and March 16, 1991. *Id.* This Court found that "[t]he dates testified to are close to the dates charged in the indictment. Given that Eakes was fully and fairly advised of the charges against him, the lack of specific dates in the indictment is not fatal." *Id.*

16

¶37. Similar to *Eakes*, Count I of Anderson's indictment gave a range of dates when rape was alleged to have occurred. At trial, the victim testified that Anderson had intercourse with her both before and after Thanksgiving. These dates were similar to the ones charged in the indictment – "on or about November, 2006." Accordingly, this Court finds that the lack of specific dates in Count I was not fatal and that the trial court did not err in denying Anderson's motion to quash.

**VI. WHETHER THE STATE VIOLATED THE GOLDEN RULE DURING CLOSING ARGUMENTS.**

¶38. Anderson argues that the prosecutor commented improperly during closing arguments, violating the golden rule. The golden rule prohibits attorneys from asking the jurors to put themselves in the place of one of the parties. *Wells v. State*, 698 So. 2d 497, 507 (1997). While statements violating this rule generally are prohibited, this Court has held that when a statement is "'sufficiently insignificant in the overall context of the case,'" the result is harmless error. *Id.* (quoting *Chisolm v. State*, 529 So. 2d 635, 640 (Miss. 1988)). Specifically, Anderson objects to the following statement made by the prosecutor:

> They want you to say because she was, happy, the crime didn't happen. She's supposed to be sad for all those years of her life and not smile at all because she's being abused. It doesn't happen that way. Remember in voir dire, ladies and gentlemen, we had members in the venire who raised their hand and said, they went through abuse for years . . . .

17

Defense counsel objected to this statement, and the trial court sustained the objection.[11] On appeal, Anderson argues that the State improperly asked the jurors to put themselves in the victim's place.

¶39. In analyzing whether statements made during opening or closing arguments are proper, this Court has stated:

> Attorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.

*Tate v. State*, 20 So. 3d 623, 629 (Miss. 2009) (citations and quotations omitted).

¶40. In *Chisolm*, the defendant was charged with armed robbery, and the prosecutor made the following statement during closing argument:

> Think about yourself being a seventy-one-year-old person, minding your own business, driving your own tractor on your own land, business as usual, and then one day this happens to you and, all of a sudden, you are laying there on the ground.

---

[11]Defense counsel's objection at trial was "I object to commenting on the venire, Your Honor. That's not anything in evidence in [sic] this." While the trial court sustained the objection, it did not admonish the jury to disregard the comment, nor was the trial court requested by defense counsel to admonish the jury in this regard. However, the trial court, *sua sponte*, gave a written instruction to the jury which stated, *inter alia*: "Arguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. *If any argument, statement or remark has no basis in the evidence, then you should disregard that argument, statement or remark.*" (Emphasis added.)

*Chisolm*, 529 So. 2d at 639.  Defense counsel objected to the statement, and the trial court overruled the objection. *Id.*  This Court held that "the argument was sufficiently insignificant in the overall context of the case before us that we find the error harmless."  *Id.* at 640.

¶41.    In today's case, while it was error for the prosecutor to make a statement concerning jurors' past experiences with abuse, this error is harmless in light of the other evidence against Anderson.   Allison testified that Anderson had sexual intercourse with her continually over several years, and the jury heard eyewitness testimony of one occasion of sexual intercourse from Allison's aunt. While we find that the statement was improper, it did not create prejudice that would influence the jury verdict.  Accordingly, we find that any error in the prosecutor's statements was harmless.

### VII.    WHETHER THE STATE IMPROPERLY COMMENTED ON THE DEFENDANT'S RIGHT TO REMAIN SILENT.

¶42.    Anderson argues that the prosecutor violated his Fifth-Amendment right to remain silent by making the following statement during the State's final closing argument:

> I heard defense counsel up here, and it interests me because I took notes during the opening statement and during closing statement, and they say a lot of things.  But the one thing I never heard come out of either of those attorneys['] mouths whose job it is to represent that defendant is that he did not do it.

Defense counsel objected to this statement, and the trial court overruled the objection, holding that the prosecutor was referring to the defense counsels' opening and closing arguments.  Despite the trial court's ruling that the prosecutor had commented on defense

counsels' arguments, and not Anderson's failure to testify, Anderson now argues that the prosecutor improperly commented on his right to remain silent.[12]

¶43.    As we have noted, when considering whether an attorney's comment during opening or closing statements was improper, this Court must determine "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Tate*, 20 So. 3d at 629.

¶44.    This Court distinguishes between comments on a defendant's right to remain silent, which violate the Fifth Amendment, and comments on the defendant's failure to present any evidence, which do not result in error. *See id.* at 630; *Dora v. State*, 986 So. 2d 917, 923 (Miss. 2008).  This Court has held that

> [t]here is a difference . . . between a comment on the defendant's failure to testify and a comment on the defendant's failure to put on a successful defense.  The State is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to the defendant's failure to testify by innuendo and insinuation.  The question is whether the prosecutor's statement can be construed as commenting upon the failure of the defendant to take the stand.

*Dora*, 986 So. 2d at 923 (citing *Wright v. State*, 958 So. 2d 158, 161 (Miss. 2007) (internal citations omitted)).

¶45.    In the present case, the prosecutor commented on defense counsels' failure to assert that Anderson did not commit the accused crimes. Without reaching the question of whether

---

[12]At trial, defense counsel's objection clearly stated that the objection was based on the prosecutor's "[c]ommenting on the non-testimony of the defendant." The trial court responded that the prosecutor "specifically referred to the argument."

the prosecutor's comments were otherwise objectionable, they were not a comment on the defendant's right to remain silent. Therefore, we find no merit in this assignment of error.

### VIII. WHETHER THE TRIAL COURT ERRED BY FAILING TO ASSURE THAT DEFENSE EXHIBIT I WAS PROPERLY SUBMITTED TO THE JURY FOR CONSIDERATION.

¶46. In this assignment of error, Anderson argues that the trial court erred by failing to assure that the only defense exhibit received into evidence actually found its way into the jury room for consideration by the jury. The exhibit in question was a hand-drawn map of the home in which Allison lived with her mother and Anderson. Allison drew the map during cross-examination to demonstrate the floor plan of the home, including the location of her bedroom, her mother's bedroom, and Anderson's bedroom. The State objected to the drawing being admitted into evidence on the basis that it was not an accurate depiction of the home. The trial court overruled this objection and admitted the exhibit, stating that "[t]he jury I think has heard the testimony, can draw whatever conclusions they deem appropriate."

¶47. The day after the jury deliberated and returned a guilty verdict, the trial court was advised that the exhibit was missing and subsequently called a hearing to discuss the issue. Attorneys for both sides were present at the hearing, but the record is silent as to whether Anderson was present. The court reporter stated that she was positive that the exhibit went back to the jury. The bailiff, court reporter, and court administrator searched for the exhibit in the jury room, restrooms, and garbage. When it was determined that the exhibit was not in the courthouse, the trial judge contacted both attorneys to notify them of the missing exhibit and to ask if they had mistakenly taken the exhibit. After speaking with the attorneys, the trial court instructed the court reporter to telephone the jurors and ask which exhibits they

remembered seeing in the jury room. One of Anderson's attorneys was present for the phone calls, where the court reporter was immediately able to contact the jurors. Anderson's attorney was not present for the calls where the court reporter initially had to leave a message, and the juror later returned the call. All but one of the jurors were polled, and nine of the twelve remembered at least seeing the exhibit during deliberations. Two of the jurors did not remember seeing the exhibit, and the court reporter was unable to contact one juror. After reviewing the results of the jury poll, the trial court found that:

> [i]t does appear that [the exhibit] did go back to the jury for their consideration since virtually all of them remember, at least those who have been contacted. They simply do not know what happened to it between the time that the jury concluded their deliberations and the time those documents were returned to the court reporter last night.

The trial court then asked the attorneys if they would like the court reporter to file a statement once she was able to contact the last juror, or if they would like another hearing. The attorneys requested another hearing.

¶48.   At the second hearing, the court reporter stated that she eventually was able to contact the additional juror, who did not remember seeing the exhibit. Thus, nine jurors remembered seeing the exhibit in the jury room and three did not.[13]

¶49.   Generally, the trial court should allow the jury to bring exhibits received into evidence with them back into the jury room during deliberation. Miss. Code. Ann. § 99-17-37 (Rev. 2007); *Pettit v. State*, 569 So. 2d 678, 680 (Miss. 1990). Based on the record in the present case, it appears that the exhibit likely was present with the jury during deliberation. The

---

[13] The court reporter later stated that eight jurors remembered seeing the exhibit. However, this is inconsistent with the statements made earlier in the record.

22

exhibit was a floor plan of the home in which Allison, her mother, and Anderson had lived and arguably had little probative value. In reality, since the jury had heard Allison's testimony as to the floor plan of the home, this exhibit could be considered cumulative.

¶50. Although Anderson argues that the drawing was the only defense exhibit and that it was unclear whether all of the jurors had viewed the exhibit in deliberations, Anderson makes no showing that the exhibit's alleged absence prejudiced him in anyway. *See* ***People v. Lee***, 38 Cal. App. 3d 749, 759 (Cal. Ct. App. 1974) (finding that the defendant was not deprived of a fair trial when evidence disappeared during jury deliberations because: the defendant failed to demonstrate what value the jury would have afforded the exhibit, the exhibit was not lost until after the first day of deliberations, the exhibit was negligently discarded, and the exhibit was cumulative of oral testimony).

¶51. Because the totality of the record reveals that there was a high probability that the missing exhibit was present with the jury during deliberations and because of the small amount of probative value the exhibit likely had, we find no merit to this assignment of error.

¶52. We emphasize here that, confronted with this post-verdict discovery of a missing exhibit, the trial judge openly and fairly dealt with this issue. This situation was not one of juror misconduct in which the trial court would have been required to invoke the procedural safeguards set out in ***Gladney v. Clarksdale Beverage Company, Inc.***, 625 So. 2d 407 (Miss. 1993).

### IX. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT COUNTS I AND II OF THE INDICTMENT.

¶53.    Anderson argues that the evidence presented at trial was insufficient to support the two counts of statutory rape.  In analyzing the sufficiency of the evidence, this Court views the evidence in the light most favorable to the prosecution and asks if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005) (quoting ***Jackson v. Va.***, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).  Anderson was charged under Mississippi Code Section 97-3-65(1)(b) (Rev. 2006), which states that a person is guilty of statutory rape if the person "has sexual intercourse with a child who: (i) Is under the age of fourteen (14) years; (ii) Is twenty-four (24) or more months younger than the person; and (iii) Is not the person's spouse."

### A.    Count I

¶54.    As previously stated, Count I of the indictment charged Anderson with statutory rape "on or about November, 2006."  At trial, Allison testified that Anderson had been having sexual intercourse with her since she was seven years old.  With regard to November 2006, Allison testified that Anderson had intercourse with her both before and after Thanksgiving, which was on November 23, 2006.  She also testified that Anderson had intercourse with her on November 24, 2006, at her aunt's house and on November 25, 2006, at her family's farm.  The only evidence presented to contradict Allison's testimony was the testimony of Anderson's brother, Seth Abbot.  Abbot testified that he was with Anderson and Allison the entire time they were at the family farm on November 25, 2006, and that he did not see Anderson have intercourse with Allison.  No evidence was presented to contradict Allison's testimony of the other November incidents.

24

¶55.	This Court has held that "[a]n individual may be found guilty of rape on the uncorroborated testimony of the prosecuting witness, where the testimony is not discredited or contradicted by other credible evidence." *Parramore v. State*, 5 So. 3d 1074, 1077-78 (Miss. 2009) (citing *Withers v. State*, 907 So. 2d 342, 353 (Miss. 2005)) ([P]ersons accused of statutory rape "may be found guilty on the uncorroborated testimony of a single witness."). Other than the testimony of his brother, which contradicts only Allison's testimony regarding the November 25, 2006, rape, Anderson did not present evidence to discredit or contradict Allison's testimony regarding the other rapes that occurred in November. Accordingly, this Court finds that sufficient evidence was presented at trial to convict Anderson of statutory rape "on or about November, 2006."

### B.	Count II

¶56.	Count II of the indictment charged Anderson with statutory rape on November 25, 2006. As discussed above, Allison testified that Anderson had intercourse with her at the family farm on this date. Anderson's brother contradicted Allison's testimony by stating that he was with Anderson and Allison the entire time they were at the farm and that he did not see Anderson have intercourse with Allison.

¶57.	When there is conflicting evidence, the trier of fact determines the credibility of the witnesses and the weight of their testimony. *Martin v. State*, 970 So. 2d 723, 727 (Miss. 2007). In the present case, the jury heard the testimony of Allison and Seth Abbot and convicted Anderson of statutory rape on November 25, 2006. Because the jury is to determine the weight and credibility of testimony, and because evidence was presented supporting Count II of the indictment, we find that a "rational trier of fact could have found

the essential elements of [statutory rape] beyond a reasonable doubt*." **Bush,** 895 So. 2d at 843.

¶58. In sum, we find that sufficient evidence supported the charges in Counts I and II of the indictment and, accordingly, find no merit in this assignment of error.

### X.   WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶59. Anderson argues that the jury's verdict was against the overwhelming weight of the evidence. At the end of his jury trial, Anderson moved for a new trial, and the trial court denied Anderson's motion.

¶60. On appeal, Anderson argues that the verdict was against the great weight of the evidence because: (1) inconsistencies exist in the testimony of the State's witnesses; (2) the State relied on hearsay testimony; (3) no medical or forensic evidence corroborated Allison's testimony; and (4) Allison was unable to recall specific dates regarding Counts I and II of the indictment.

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

**Bush**, 895 So. 2d at 844 (citing **Herring v. State**, 691 So. 2d 948, 957 (Miss. 1997)).  The Court should reverse only if "the evidence preponderates heavily against the verdict." **Amiker v. Drugs for Less, Inc.**, 796 So. 2d 942, 947 (Miss. 2000) (citations omitted).  The evidence should be viewed in the light most favorable to the verdict.  **Herring**, 691 So. 2d at 957.

26

¶61. Allison testified that Anderson had been having sexual intercourse with her since she was seven years old. Allison's aunt, Deborah Blevin, testified that she had seen Anderson having sexual intercourse with Allison on December 2, 2006. While the points that Anderson argues are true – there was hearsay testimony, a lack of physical evidence, and some inconsistencies – we find that the jury's verdict is not against the overwhelming weight of the evidence. When viewed in the light most favorable to the verdict, the evidence does not preponderate heavily against the verdict. *See Amiker*, 796 So. 2d at 947. Accordingly, this assignment of error is without merit.

## XI. WHETHER CUMULATIVE ERROR DENIED THE DEFENDANT A FAIR TRIAL.

¶62. Anderson argues that cumulative error warrants reversal in this case. "This Court may reverse a conviction and/or sentence based upon the cumulative effect of errors that independently would not require reversal." *Goff v. State*, 14 So. 3d 625, 672 (Miss. 2009) (citing *Jenkins v. State*, 607 So. 2d 1171, 1183-84 (Miss. 1992); *Hansen v. State*, 592 So. 2d 114, 153 (Miss. 1991)). The only error present in the trial of this case is the statement made by the prosecutor during closing argument referring to jurors' past experiences with abuse. This did not amount to reversible error, and thus, there was no resulting cumulative prejudicial effect. *Byrom v. State*, 863 So. 2d 836, 847 (Miss. 2003).

¶63. Accordingly, this assignment of error is without merit.

## CONCLUSION

¶64. Based on today's discussion, we find no reversible error in the record; therefore, the judgment of convictions and sentences entered by the Circuit Court for the First Judicial District of Harrison County is affirmed.

¶65. **COUNT I: CONVICTION OF STATUTORY RAPE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF STATUTORY RAPE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IMPOSED IN COUNTS I, II AND III SHALL RUN CONCURRENTLY.**

**WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. CHANDLER, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. KING, J., NOT PARTICIPATING.**

**CHANDLER, JUSTICE, CONCURRING IN PART AND IN RESULT**:

¶66. I respectfully concur in part and in the result. I would find that the trial court abused its discretion by admitting Dr. Matherne's testimony regarding the fist-demonstration methodology, but the error was harmless in light of the overwhelming evidence of Anderson's guilt. In my opinion, this testimony was unreliable and inadmissible under Mississippi Rule of Evidence 702. I agree with the majority's analysis of the other issues.

¶67. After reciting the familiar modified ***Daubert*** standard for the admission of expert testimony under Rule 702, the majority concludes that Dr. Matherne's fist-demonstration methodology was a reliable technique for gathering information from an alleged child-abuse victim. As the majority recognizes, ***Daubert*** lists several illustrative factors which the gatekeeper may consider in determining the reliability of expert testimony. ***Miss. Transp.***

28

*Comm'n v. McLemore*, 863 So. 2d 31, 36 (Miss. 2003) (citing *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 592-94, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). These factors include: (1) whether the theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) whether there is a high known or potential rate of error concerning the particular technique; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or technique enjoys general acceptance in the relevant scientific community. *Id.* at 37.

¶68. Whether these factors are applicable in a particular case depends upon the individual circumstances of the case. *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). Because a witness may qualify as an expert in areas other than science or medicine, the *Daubert* factors may be more or less helpful to the trial court in its role as gatekeeper. *Id.* "[T]he *Daubert* factors should be considered only 'where they are reasonable measures of the reliability of expert testimony.'" *Id.* (citing *Kumho Tire*, 526 U.S. at 152). But in every case "whether testimony is based on professional studies or personal experience, the 'gatekeeper' must be certain that the expert exercises the same level of 'intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* at 37-38. "Neither *Daubert* nor the Federal Rules of Evidence requires that a court 'admit opinion evidence that is connected to existing data only by the ipse dixit of the expert,' as self-proclaimed accuracy by an expert [is] an insufficient measure of reliability." *Id.* at 37 (quoting *Kumho Tire*, 526 U.S. at 157).

¶69. Because the *Daubert* inquiry is fact-specific, I review Dr. Matherne's testimony at the *Daubert* hearing. *See McLemore*, 863 So. 2d at 40. Dr. Matherne testified that he performs

29

interviews with alleged child sexual-abuse victims who are referred by the Department of Human Services. He stated that he has interviewed between one thousand and two thousand alleged child sexual-abuse victims over his forty-year career, and that he teaches interviewing techniques to psychology students. Dr. Matherne testified that his methodology is based on years of reading literature and attending seminars. Dr. Matherne testified that, in interviewing alleged child sexual-abuse victims, there is a danger that leading questions could yield misinformation from the child. He testified that he developed the fist-demonstration methodology himself based upon years of experience, but he admitted that it has not been peer-reviewed. The technique has not been cited in any journal, and he does not know of any other psychologists who use it. Dr. Matherne testified that there is no name for his interviewing protocol.

¶70. Dr. Matherne stated that the fist-demonstration technique allows the child to communicate regarding penetration, and then this information is used to determine whether a physical examination is necessary. Dr. Matherne stated the reason the technique is visual is that sometimes the child's words do not convey the necessary information. He said some children become emotional during the fist-demonstration. The trial court admitted Dr. Matherne's expert testimony, finding that the fist-demonstration methodology was reliable.

¶71. In my opinion, the trial court abused its discretion by finding that the fist-demonstration technique was reliable. Certainly, a methodology for interviewing alleged child sexual-abuse victims is not amenable to testing and determining a rate of error. However, the other ***Daubert*** factors are helpful in determining the reliability of such a technique, including (1) whether the technique has been subjected to peer review and

30

publication; (2) whether there are standards controlling the technique's operation; and (3) whether the theory or technique enjoys general acceptance in the relevant scientific community. For example, in *Mooneyham v. State*, 915 So. 2d 1102, 1107-08 (Miss. 2005) (Chandler, J., specially concurring), a majority of the Court of Appeals found that testimony by an interviewer of an alleged child sexual-abuse victim using the "Finding Words" protocol was reliable because there were standards controlling the protocol, the interviewing techniques had been peer-reviewed, and these techniques had enjoyed general acceptance in the scientific community.

¶72. While I agree it is not fatal that Dr. Matherne's fist-demonstration technique has not been peer-reviewed, neither of the other two factors was met. Nothing shows that the fist-demonstration technique is not unduly suggestive, other than Dr. Matherne's testimony that he believes it is an effective way for the child to communicate information. I would find that the fist-demonstration technique was not reliable. I note that child sexual-abuse cases often present the jury with only the child's word against the perpetrator's, and that forensic interviewers in Mississippi are permitted to testify that the alleged victim's characteristics are consistent with those of a child who has been abused. *Bishop v. State*, 982 So. 2d 371, 381 (Miss. 2008). This means that the testimony of a forensic interviewer like Dr. Matherne often may be the determinative factor in a child sexual-abuse case. In light of these considerations, this Court should be exacting in its application of the reliability requirements of the modified *Daubert* test to forensic interviewing techniques.

¶73. To secure Anderson's conviction of statutory rape, the State had to prove that Anderson had sexual intercourse with Allison. At the time of the crime, sexual intercourse

31

was defined as "a joining of the sexual organs of a male and female human being in which the penis of the male is inserted into the vagina of the female." Miss. Code Ann. § 97-3-65 (6) (Rev. 2006). At the trial, Dr. Matherne stated that he had determined that penetration had occurred with Allison. He testified that Allison had become emotional during the fist demonstration. Dr. Matherne testified that Allison had performed the demonstration by taking her "index finger of one hand and insert[ing] into the center of the closed fist." Then, Dr. Matherne used his own hands to replicate Allison's fist-demonstration for the jury. This testimony was strong evidence of sexual intercourse, because it consisted of Dr. Matherne's expert opinion that, based on the fist-demonstration methodology, penetration had occurred. As previously discussed, I would find that this testimony was unreliable, and its admission was error. However, the testimony of Allison and the eyewitness that there was penetration renders the error harmless, because it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Moffett v. State*, 49 So. 3d 1073, 1099 (Miss. 2010) (quoting *Brown v. State*, 995 So. 2d 698, 704 (Miss. 2008)).

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶74. I respectfully disagree with the majority's conclusion that the trial court did not err in failing to quash Count I of Anderson's indictment.

¶75. The Sixth Amendment of the federal constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. The Mississippi Constitution also provides that "[i]n all criminal prosecutions the accused shall have a right . . . to demand the nature and

32

cause of the accusation." Miss. Const. art. 3 §26. Additionally, this Court expounded on these constitutional provisions when it promulgated Uniform Circuit and County Court Rule 7.06, which requires, among other things, that the indictment contain a "definite written statement of the essential facts constituting the offense charged," fully notifying the defendant of the nature of the charges against him. Moreover, this Court requires an indictment to "apprise the defendant of the charge against him in fair and intelligible language (1) in order that he may be able to prepare his defense, and (2) the charge must be laid with sufficient particularity of detail that it may form the basis of a plea of former jeopardy in any subsequent proceedings." *Westmoreland v. State*, 246 So. 2d 487, 489 (Miss. 1971).

¶76.    In this case, Count I and Count II of the indictment charged Anderson with statutory rape in accordance with Mississippi Code Section 97-3-65(1)(b) (Rev. 2006). Count III of the indictment charged Anderson with sexual battery under Mississippi Code Section 97-3-95(2) (Rev. 2006). Count I of the indictment alleged that Anderson:

> in the First Judicial District of Harrison County, Mississippi, on or about November, 2006[,] did feloniously and unlawfully have sexual intercourse with [Allison], a child under the age of fourteen (14) years and twenty-four (24) or more months younger than the said David Paul Anderson and not the spouse of the said David Paul Anderson at the time in question, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

Count II of the indictment provided that Anderson:

> in the First Judicial District of Harrison County, Mississippi, on or about November, 25, 2006[,] did feloniously and unlawfully have sexual intercourse with [Allison], a child under the age of fourteen (14) years and twenty-four (24) or more months younger than the said David Paul Anderson and not the spouse of the said David Paul Anderson at the time in question, contrary to the

33

form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

¶77. The date specified in Count II of the indictment is within the time period provided in Count I, which obviously includes November 25, 2006, and, when coupled with the identical verbiage of the two counts, renders the charges against Anderson indistinguishable from each other. Thus, the essential facts set forth in the indictment were insufficient meaningfully to inform Anderson of the nature of the charges against him. Because it was alleged that Anderson had committed statutory rape "on or about November, 2006," in Count I and that he had committed an additional statutory rape on the same child "on or about November 25, 2006," in Count II, the indictment did not inform Anderson of the charges against him with adequate clarity for him to determine whether he was accused of one offense or two, or if two, which occurred first and which second. For all that anyone can tell from the indictment, Anderson could have been charged with two counts of statutory rape that were alleged to have taken place concurrently on November 25, 2006.

¶78. Anderson argued, in both a pretrial hearing on his motion to quash Count I of the indictment and on appeal, that there was nothing in the indictment or the discovery to distinguish what evidence the State intended to offer against him for Count I versus Count II. The State responded by saying that Allison had alleged that "it" had happened some time prior to the December holidays. During the pretrial hearing on the motion to quash, the trial court questioned the State regarding whether it would introduce testimony with respect to one or two offenses during the month of November 2006. The State said that Allison "gave testimony that would for the most part narrow it down to the 25th of November, but in

34

addition to that the victim has stated that the sexual abuse was frequent enough that at a minimum two acts occurred in November . . . ." At trial, the child, for the first time, testified that Anderson had engaged in unlawful sexual contact with her before and after Thanksgiving in November of 2006.

¶79. With regard to the specific date of November 25, 2006, in Count II, Anderson was able to provide alibi testimony from his brother; however, because of the insufficient notice provided by Count I of the indictment, it was impossible for Anderson to determine whether he had an alibi, or any other defense, to that indistinguishable accusation.

¶80. The majority relies on the provision of Uniform Circuit and County Court Rule 7.06 which provides that "failure to state the correct date shall not render the indictment insufficient." Obviously, the rule contemplates a single charge and does not take into account the possibility of multiple charges, let alone multiple, *identical* charges. The problem in this case is not that the indictment provided a wrong date; rather, the date in Count I subsumed the date provided in Count II, thereby providing too little information for Anderson to have adequate notice of the nature of the charges against him. Our case law requires that an indictment provide the defendant sufficient and particular detail of the alleged offenses so that he may prepare his defense. *Westmoreland*, 246 So. 2d at 489. However, the indictment in this case failed to provide Anderson the requisite level of detail so that he could adequately prepare his defense, thereby depriving him of his constitutional right to be informed of the nature and cause of the accusations against him. U.S. Const. amend VI; Miss. Const. art. 3, § 26.

¶81. The majority relied on *Eakes v. State*, 665 So. 2d 852, 860 (Miss. 1995), for the proposition that specific dates in indictments are "not required so long as the defendant is fully and fairly advised of the charge against him." In *Eakes*, the defendant was convicted of three counts of sexual battery, and claimed on appeal that the indictment was defective because, among other things, it did not contain specific dates. *Id.* The indictment against Eakes provided that the alleged offenses had occurred "on, about or between:" (1) December 1, 1990 and December 24, 1990; (2) February 1, 1991 and April 30, 1991; and (3) "on or about" May 11 and 12, 1991. *Id.* In that case, Eakes's indictment clearly distinguished each of the charged crimes from the others by plainly alleging that they had occurred at separate and distinct times. The issue raised in *Eakes* is vastly different from the problem presented in the case at bar, where the allegation that an offense had occurred "on or about November, 2006," presented in Count I of the indictment encompassed the date of "on or about November 25, 2006" designated in Count II of the indictment, rendering the charges so indistinguishable from each other that no one can say that Anderson was not, in this case, twice convicted of the same conduct.

¶82. An indictment must contain "sufficient facts to enable [the defendant] to plead double jeopardy in the event of future prosecution for the same offense." *Berry v. State*, 996 So. 2d 782, 786 (Miss. 2008) (quoting *Gilmer v. State*, 955 So. 2d 829, 836-37 (Miss. 2007)). The Fifth Amendment of the federal constitution provides in part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. The Mississippi Constitution also provides that "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense . . . ." Miss. Const. art. 3, § 22.

36

¶83.   The double jeopardy clause guarantees three separate constitutional protections: "(1) protection from a second prosecution for the same offense after acquittal, (2) protection from a second prosecution for the same offense after conviction, and (3) protection from multiple punishments for the same offense."  ***Graves v. State***, 969 So. 2d 845, 847 (Miss. 2007) (citing ***U.S. v. Dixon***, 509 U.S. 688, 695-96, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993)). Anderson did not raise double jeopardy on appeal; however, "the protection against double jeopardy is a fundamental right, [and] we will not apply a procedural bar . . . ."  ***Graves***, 969 So. 2d at 846-47 (citing ***Fuselier v. State***, 654 So. 2d 519, 522 (Miss. 1995)).  Here, the vagueness of Counts I and II in Anderson's indictment prevents him from pleading double jeopardy.  Anderson does not know the specific acts of which he has been convicted, and he is unable to ascertain whether he is currently being punished twice for a single act.

¶84.   As no statute of limitations exists for this crime, there is nothing to prevent a future grand jury's indicting Anderson for a third statutory rape of this child during the one-month period alleged in the indictment.  The record contains as much evidence of three offenses as it does of one or two.  Specifically, Allison testified that the November offense was not the first time that Anderson had engaged in unlawful conduct with her, and that Anderson had been committing these offenses on Allison since she was approximately seven years old.  At trial, the child testified, for the first time, that Anderson had engaged in unlawful contact with her before and after Thanksgiving in November of 2006.  Further, during the pretrial hearing on the motion to quash Count I of the indictment, the State alluded to its having enough testimony to support up to twenty separate incidents that allegedly had occurred in November of 2006.  The evidence the State used to prove Count I of the indictment, coupled with the

37

vague language of the indictment, leaves the door open for the State to bring numerous additional indictments against Anderson for the same act. If Anderson is indicted in the future for one count of statutory rape of this child, alleged to have happened "on or about November 2006," in the same county and state, no one, including this Court, will be able to determine whether he previously was tried for the same conduct. Anderson will be unable to assert double jeopardy in the event of subsequent prosecution(s) for the same conduct.

¶85. Count I of the indictment should have been quashed for failing to inform Anderson of the nature and cause of the accusations against him in violation of the Sixth Amendment of the United States Constitution and Article 3, Section 26, of the Mississippi Constitution, and because that count is constitutionally inadequate for its clear violation of the former jeopardy provisions of the Fifth Amendment to the United States Constitution and Article 3, Section 22, of the Mississippi Constitution. Accordingly, I would reverse and render the conviction on Count I of the indictment, but I would affirm the convictions and sentences for Counts II and III.